WALLER, Chief Justice,
for the Court:
¶ 1. The Sixth Amendment to the United States Constitution and Mississippi law both afford an accused the right to a speedy trial. And, once an accused is brought to trial, the State bears the burden of proving each element of the charged offense beyond a reasonable doubt. Jerry McBride argues that his right to a speedy trial was violated, and that the evidence was insufficient to sustain his conviction of sexual battery. We disagree. His conviction and sentence, therefore, are affirmed.
FACTS AND PROCEDURAL HISTORY
¶ 2. The following history is taken from the facts and trial-court proceedings set out in the opinion of the Court of Appeals.
... In May 2006, McBride was indicted for sexual battery of his daughter, who was under the age of fourteen at the time of the incident, pursuant to Mississippi Code Annotated section 97-3-95(l)(d) (Rev.2006). The indictment stated the battery occurred “on or about or between January 2002, and December 2005” in Coahoma County. McBride was subsequently arrested, arraigned, and assigned a coui*t-appointed attorney.
... McBride did not go to trial until several terms of court had passed. The court docket indicates that in September 2007, an order setting trial was filed. Representations at the pre-ti'ial hearing indicated that this trial setting was for November 2007. Then, the record shows that in December 2007, an order reset trial for January 2008, but in January 2008 an agreed order reset trial to February 2008. In December 2007, McBride filed two pro se “Motion[s] for Directed Verdict of Acquittal,” within days of one another, complaining that he had been incarcerated for sixteen months in violation of his constitutional rights. Therefore, he asked that the charges against him be dismissed. Additionally, he noted he never received a copy of the indictment, never had a preliminary hearing, and never asked for a continuance of his trial, among other complaints. Also, in January 2008, McBride, dissatisfied with his court-appointed attorney’s performance, filed a motion requesting termination of the services of his attorney. Pretrial hearings were held on McBride’s motions, which were denied. The trial judge, considering McBride’s pro se motions together, stated that McBride’s “most significant complaint” was concerning the delay in his trial. However, the trial judge made a detailed analysis of the appropriate factors outlined in Barker v. *141 Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) regarding the speedy-trial complaint and found no prejudice.
... McBride’s trial commenced on February 19, 2008. The State produced three witnesses: the victim, a middle-school counselor, and a Department of Human Services (DHS) specialist. The victim, who was eighteen years old at the time of trial, testified regarding two sexual incidents with McBride. At the time of the sexual incident, she was approximately eleven years old and McBride was living with his mother. He drove her and his seven-year-old son to “a friend’s house,” which was in “the Brick Yard” in Clarksdale, Mississippi. When they arrived at the house, nobody was home. McBride took his daughter to the back of the house. He began hugging and touching her. Then, he pulled down her pants, unzipped his pants, and put his penis in her vagina. She testified she fought and screamed, but she did not tell anyone about the incident because she was scared.
... The victim also testified about a second sexual incident with McBride that occurred when she was approximately fifteen years old. She and McBride went on the back roads outside of Clarksdale in order to let her drive. McBride’s daughter testified she did not want to go with him. When they were approximately thirty minutes from Clarksdale, while she was driving, McBride began fondling her breasts and touching her between her legs, on top of her clothes. The victim, who lives with her mother, admitted that McBride had been mostly absent from her life and did not provide her money or material possessions. Also, there was “bad blood” between her mother-and her father, who did not live together. The victim stated these were the only incidents of sexual abuse by her father.
... The next witness for the State was a counselor from Oakhurst Middle School in Clarksdale. She testified that the victim approached her at school. Based on what the victim told her, the counsel- or alerted DHS, which came to the school and interviewed the victim. The last witness for the State, a family-protection specialist with DHS, explained she was employed by DHS to investigate allegations of child abuse. She testified that she investigated the allegation and spoke with the victim, as well as the victim’s family members. The victim had a “forensic interview” with DHS in December 2005.
... No witnesses testified for the defense. The jury returned a verdict of guilty, and McBride was sentenced to twenty-five years in the custody of the MDOC. McBride filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which was denied.
McBride v. State, 61 So.3d 174, 176-78 (Miss.Ct.App.2010).
¶ 3. The trial court granted McBride’s motion for out-of-time appeal, and he appealed his conviction and sentence. We assigned the case to the Court of Appeals, which affirmed the trial court. We granted certiorari and now consider whether McBride was denied his constitutional and statutory rights to a speedy trial, and whether the State carried its burden of proving each element of the offense beyond a reasonable doubt.
DISCUSSION
I. Neither McBride’s constitutional nor statutory right to a speedy trial was violated.
A. Constitutional right to a speedy trial
¶ 4. The Sixth Amendment to the United States Constitution provides an accused *142 the “the right to a speedy and public trial” U.S. Const, amend. VI. That right applies to the states through the Due Process Clause of the Fourteenth Amendment. Klopfer v. North Carolina, 386 U.S. 213, 222-23, 87 S.Ct. 988, 993-94, 18 L.Ed.2d 1 (1967). Article 3, Section 26 of the Mississippi Constitution of 1890 likewise guarantees a criminal defendant the right to “a speedy and public trial.... ” Miss. Const. art. 3, § 26.
¶ 5. The Supreme Court of the United States has set forth four factors to consider whenever a defendant alleges that his constitutional right to a speedy trial has been violated: (1) the length of delay; (2) the reason for the delay; (3) whether the defendant asserted his right; and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). None of these four factors is necessary or sufficient on its own to find a deprivation of the right to a speedy trial. Id. at 533, 92 S.Ct. 2182. All are related and must be considered alongside other relevant circumstances. Id. The analysis thus entails “a difficult and sensitive balancing process.” Id.
¶ 6. Where, as here, a trial court articulates findings of fact and sets forth reasons for its decisions concerning the Barker factors, this Court will uphold those findings so long as they are based upon substantial, credible evidence. See State v. Ferguson, 576 So.2d 1252, 1255 (Miss.1991).
1. Length of the delay
¶ 7. A full Barker analysis is warranted only if the delay was presumptively prejudicial. Stark v. State, 911 So.2d 447, 450 (Miss.2005) (citing Barker, 407 U.S. at 530, 92 S.Ct. 2182). In Mississippi, a delay of more than eight months is presumptively prejudicial. Stark, 911 So.2d at 450 (citing Smith v. State, 550 So.2d 406, 408 (Miss.1989)).
¶ 8. A formal indictment or information or an arrest — whichever first occurs — triggers the constitutional right to a speedy trial. United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971); Smith, 550 So.2d at 408 (citing Perry v. State, 419 So.2d 194, 198 (Miss.1982)). Accordingly, McBride’s constitutional right to a speedy trial attached when he was indicted on May 30, 2006. His trial, however, did not occur until February 19, 2008-a delay of almost twenty-one months. The delay here is thus presumptively prejudicial, and a full analysis of the remaining Barker factors is required.
2. Reasons for the delay
¶ 9. Once the delay is deemed presumptively prejudicial, “the burden shifts to the prosecution to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of these reasons.” Ferguson, 576 So.2d at 1254. Different weights are assigned to various reasons for the delay. Barker, 407 U.S. at 531, 92 S.Ct. 2182. “A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government[,]” whereas “[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily....” Id. Neutral reasons, nevertheless, “should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.” Id. Valid reasons, such as a missing witness, justify appropriate delay. Id.
¶ 10. At a pretrial hearing on McBride’s Motion for Directed Verdict of Acquittal, the State offered essentially four reasons for the delay in bringing McBride to trial: (1) the timing of McBride’s arrest; *143 (2) negligence or administrative oversight; (3) an overcrowded docket; and (4) the unavailability of a key witness for the State. The trial court denied McBride’s motion and issued an order explaining, court term by court term, its analysis of the reasons for the delay. It ultimately found that this factor weighed against the State, but not heavily.

May 30, 2006, to January 2007

¶ 11. McBride was indicted on May 30, 2006, about a month before the trial court’s July-to-August 2006 term. Yet McBride was not arrested and taken into custody until August 4, 2006, approximately midway through that particular term. As a result, his case was not placed on the trial calendar for the July-to-August 2006 term. The next available term of court was the January-to-February 2007 term. Though a one-month mini-term was held in the interim, the mini-term was devoted to cases that initially had been scheduled for the July-to-August 2006 term. The trial court did not weigh the seven-month period from May 30, 2006, to January 2007 against the State.
¶ 12. We agree that this initial, seven-month delay should not be weighed against the State. Substantial evidence supports that the sheer timing of McBride’s indictment and arrest practically foreclosed the setting of any trial date during these first seven months.

January 2007 to November 2007

¶ 13. McBride’s case was not set for trial during either the January-to-February 2007 term or the July-to-August 2007 term. The trial court attributed this to negligence or oversight on the part of the State. The trial court, however, found no evidence to suggest that the State had acted deliberately or intentionally.
November 2007 to January 22, 2008 ¶ 14. The State maintained that McBride’s case was scheduled for the November 2007 mini-term, but, obviously, was not tried during that mini-term. The State acknowledged that it did not submit a written motion for a continuance, and offered several reasons as to why the case had not been tried:
... It’s possible that [McBride’s case] was bumped. That would have been around the time that the State discovered that the forensic interviewer who performed the forensic interview in this case, Ejeera Selmer Joiner, was no longer available. The State didn’t file a written motion for continuance and there was no order continuing the case on that basis. But I would say it’s at least possible that it was continued for good cause [based] on the unavailability of that particular witness. It also could have been an overcrowded docket.
Later on, the State reemphasized the unavailability of its witness, Joiner, as the primary reason for the delay:
... That brings us to the November 2007 term in which the case was set, mini-term, when the case was set and was, for whatever reason, not tried. There is no order for a continuance. The State would say that, at worst, the delay might be attributable to the unavailability of the forensic interviewer witness Ejeera Selmer Joiner, which the State’s position would be that’s delay for good cause and should not be counted as prejudicial towards the State....
¶ 15. The trial court found that McBride’s case had been set for trial during the November 2007 mini-term, but concluded that it had not been tried due to an overcrowded docket and the unavailability of the State’s witness:
Unfortunately, due to the overcrowded nature of the court’s docket and the *144 multitude of cases set during this mini-term, [McBride’s] trial was not heard. Also, it appears that about this same time the State discovered that the forensic interviewer that conducted the interview with the alleged minor victim was no longer employed by Family Crisis Services. As such, the State had to make alternate plans regarding a child abuse and/or forensic interview expert in this case.
¶ 16. The record is sparce concerning this November 2007 mini-term. The docket sheet indicates that McBride’s case was in fact set for trial during the November 2007 mini-term. Next to “September 21, 2007,” is stamped “ORDER SETTING STATE DOCKET TRIAL CALENDAR WITH CALENDAR ATTACHED.” But the record contains no order for this trial setting; nor does it contain a motion for a continuance or any order granting a continuance. Nevertheless, the State conceded from the outset that no such motion or order existed.
¶ 17. Based on the docket sheet and the representations of the State, there is substantial evidence to support that McBride’s case was set for trial during the November 2007 mini-term, but that it was not tried then due either to an overcrowded docket or the unavailability of one of the State’s witnesses.

January 22, 2008, to February 19, 2008

¶ 18. McBride’s case finally was set for trial on January 22, 2008. But since one of the State’s witnesses was unavailable for trial on that date, both parties agreed to reset the case for trial on February 19, 2008.
¶ 19. In sum, there is substantial, credible evidence to support the trial court’s conclusion that the reasons-for-the-delay factor should weigh against the State, but not heavily. A significant portion of the delay — ten months at least — was due to negligence or oversight by the State. This is both unfortunate and regrettable. But, as the trial court noted, there is no evidence to suggest that the State acted deliberately. Consequently, this factor should not be weighed heavily against the State. Barker, 407 U.S. at 531, 92 S.Ct. 2182.
3. Assertion of the right
¶ 20. An accused has no duty to bring himself to trial. Jaco v. State, 574 So.2d 625, 632 (Miss.1990) (citing Barker, 407 U.S. at 527, 92 S.Ct. 2182). But he does have some responsibility to assert his right to a speedy trial. Barker, 407 U.S. at 528-29, 92 S.Ct. 2182. The Supreme Court in Barker emphasized “that failure to assert the right [to a speedy trial] will make it difficult for a defendant to prove that he was denied a speedy trial.” Id. at 532, 92 S.Ct. 2182.
¶ 21. Importantly, a demand for dismissal due to a speedy-trial violation is not the equivalent of a demand for a speedy trial. Perry v. State, 637 So.2d 871, 875 (Miss.1994). (citing Adams v. State, 583 So.2d 165, 169-70 (Miss.1991)). A demand for dismissal seeks discharge, not a trial. Perry, 637 So.2d at 875.
¶ 22. On December 28, 2007, more than a year and a half after being indicted, McBride filed a pro se motion for directed verdict of acquittal, alleging, in part, that his constitutional and statutory rights to a speedy trial had been violated. He filed a similar pro se motion the following month as well. Though McBride sought dismissal of his case, he never demanded a trial. His pro se motion for directed verdict of acquittal was not filed until after almost all of the delay had already occurred, and just days after the December 2007 order setting his case for trial. It is clear that McBride never *145 sought to have his case heard; he simply wanted it dismissed.
¶ 23. We find that there is substantial evidence to support the trial court’s finding that this factor does not weigh in McBride’s favor.
4. Prejudice
¶ 24. Prejudice is assessed in light of the interests that the speedy-trial right is designed to protect. Barker, 407 U.S. at 532, 92 S.Ct. 2182. Those interests are: “(ij to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.” Id. (citations omitted). The last is the most serious “because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.” Id.
¶ 25. The trial court specifically questioned McBride as to whether he had suffered any prejudice because of the delay. McBride’s only response was that the events were “fresher” in his mind a year ago. When asked if he had anything else, McBride replied, “No, not really.”
¶ 26. We agree with the trial court that McBride failed to show actual, significant prejudice from the delay. Loss of memory certainly may cause prejudice where witnesses are “unable to recall accurately events of the distant past.” Id. But a vague assertion by the defendant that certain events are not as fresh in his mind is not the same. McBride, furthermore, did not testify in his own defense and did not call any witnesses.
¶ 27. The dissent in the Court of Appeals contended that McBride was confused about the trial court’s questions concerning prejudice. McBride v. State, 61 So.3d 174, 187-88 (Miss.Ct.App.2010). It concluded that the trial court had required McBride to answer those questions even though his attorney was present, and that McBride was not informed that oppressive pretrial incarceration and anxiety were legitimate forms of prejudice. Id. McBride may very well have been confused by the questions, but it does not appear that the trial court required McBride himself to answer the questions. McBride, rather, voluntarily answered the questions while receiving hybrid representation[1] from his court-appointed attorney, Allan Shackel-ford.
¶ 28. Prior to the February 15, 2008, pretrial hearing, McBride had expressed dissatisfaction with his court-appointed attorney, Shackelford. In January 2008, McBride filed a pro se motion to have Shackelford removed as his counsel. He argued that Shackelford had failed to provide any meaningful assistance. McBride said that he had written the Mississippi Bar, had filed “complaints” against Shack-elford in the circuit court, and that he had filed suit against Shackelford in federal district court. The trial court addressed McBride’s motion at a pretrial hearing on February 14, 2008. It refused to remove Shackelford as McBride’s attorney and encouraged McBride to take advantage of Shackelford’s representation.
¶ 29. The following day, on February 15, 2008, the trial court conducted another pretrial hearing in which it addressed McBride’s speedy-trial contention. When the prejudice factor under Barker came up for discussion, the following colloquy occurred:
[The Court]: All right. Mr. McBride, these are matters that you filed pro *146 se, that is yourself. I don’t know if you want me to address you or Mr. Shackelford.
[McBride]: Well, he could address it, would be fine, sir.
[The Court]: I am interested — if you claim to have been prejudiced by this delay, I would be interested in knowing what prejudice you claim?
[McBride]: You mean in — (stops).
[The Court]: Has the delay inhibited or injured or impeded your ability to— let me make certain that you understand what I’m asking — impeded your ability to set forth your defense? I’m not asking what your defense is because at this point in time that’s really none of my business. But has the delay somehow impeded your ability to set forth your defense?
[McBride]: May I ask Mr. Shackelford?
[The Court]: Certainly.
[McBride]: Are you aware of that motion, sir?
[Shackelford]: The question he’s asking you is how did it keep you from getting a not guilty verdict? Let’s go that way.
[The Court]: I assume — you’ve pled not guilty to these allegations so I assume you claim you’re not guilty of them.
[McBride]: Yes, sir.
[The Court]: And I will assume — again, I’m not asking — I don’t want to go into what your defense is, but I assume because you claim to be not guilty that you anticipate asserting some sort of defense. You intend to defend yourself against these allegations. By proof, either by some sort of witnesses, or your testimony, or, you know, some kind of defense. And what I’m asking is dp you claim that the delay that has been associated in this case somehow prohibits you or makes it more difficult for you defend yourself? Do you understand the question?
[McBride]: Yes, sir. I’m not saying that it — I don’t really know because really I don’t really get what you’re really asking me. You know, about whether it would jeopardize me—
[The Court]: —Well, I’ll give you an example. I had another case a couple of weeks ago where there had been some delay and the defendant claimed, “Well, because of this delay, I’ve had a witness that moved out of state. I can’t find my witness now. So that’s hurt me in my ability to defend myself.” That would be a way that that [sic] defendant claimed. Or say, you know, “I can’t remember all the details of what happened anymore. It has been too long.” That might inhibit the defense. I’m just asking you do you have anything, that you can point to, to say, “Look, I would have been in a better position to defend myself a year ago than I am now because I had something then that I don’t have now.”
[McBride]: It was fresher on my mind then.
[The Court]: All right. Anything else?
[McBride]: No, not really.
It appears from the outset of this colloquy that there was some confusion as to whether McBride wanted to proceed pro se, at least with regard to his two pro se motions. And, even though McBride initially had indicated that he wanted Shackelford to respond to the trial court’s questions, it appears that McBride had a change of heart and voluntarily chose to answer the questions himself while eliciting input from Shackelford as he saw fit.
¶ 30. As to whether McBride was sufficiently informed of all the various forms of prejudice, it should first be noted that the *147 circuit court had no obligation to communicate such information to him.
¶ 31. Regardless of whether or not McBride knew about the various forms of prejudice at trial, he touches upon a few of those in his appeal. McBride now adds that, during the lengthy delay he “was deprived of his liberty spending ‘idle time’ under a ‘cloud of anxiety’ while having no opportunity'to ‘gather evidence’ on his own behalf.” It is true that the anxiety associated with pretrial delay is a legitimate consideration under Barker. Id. at 532-33, 92 S.Ct. 2182. But it is also true that such anxiety is more serious for some defendants than others. Id. at 537, 92 S.Ct. 2182 (White, J., concurring). Some degree of anxiety exists for every defendant, yet “many defendants ... believe that time is on their side and ... prefer to suffer whatever disadvantages delay may entail.” Id. It is reasonable to assume that McBride falls within this latter category, given that he never demanded a trial. Additionally, McBride’s assertions lack specificity. He does not describe how this anxiety manifestly impacted him or his family. See id. at 532, 92 S.Ct. 2182 (noting that the detrimental impact of lengthy pretrial incarceration often means loss of employment or disruption of family life). And he does not explain or offer an example of the type of evidence that he was unable to gather.
¶ 32. In sum, we find that there is substantial evidence to support the trial court’s finding that McBride suffered minimal, if any, prejudice.
¶ 33. After weighing each of the Barker factors, the trial court found that McBride’s constitutional right to a speedy trial had not been violated:
Weighing all of the [Barker ] factors, finding that the delay is not attributable to any deliberate efforts on the part of the State, that the initial delay was due to the [McBride] being arrested during the middle of an on-going term of court, that [McBride] made no effort to assert his right to a speedy trial and finally, that [McBride], if suffering prejudice, suffering [sic] only minimum prejudice, if any, the court find[s] that while the delay associated with this case is presumptively prejudicial, it is not such that violates [McBride’s] constitutionally guaranteed right to speedy trial.
¶ 34. Because the trial court’s findings are supported by substantial, credible evidence, we affirm that McBride’s constitutional right to a speedy trial was not violated.
B. Statutory right to a speedy trial
¶ 35. In addition to the constitutional right to a speedy trial, Section 99-17-1 of the Mississippi Code creates a statutory right to a speedy trial. Miss. Code Ann. § 99-17-1 (Rev.2007). It states that “[u]nless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.” Miss.Code Ann. § 99-17-1 (Rev.2007). This Court has interpreted this statute to require that a defendant show not only that he was tried more than 270 days after his arraignment, but that he sustained prejudice as well. Guice v. State, 952 So.2d 129, 139-40 (Miss.2007).
¶ 36. Though the trial court did not mention McBride’s statutory right to a speedy trial in its written order, McBride raised the issue in his motion for directed verdict of acquittal. Additionally, both McBride and the State addressed the issue in the pretrial hearing on McBride’s motion. This issue, therefore, is properly before us.
*148 ¶ 37. McBride filed his first pro se motion for directed verdict of acquittal on December 28, 2007, well over 270 days after his August 10, 2006, arraignment. As already discussed, even then, he sought dismissal, not a trial. Regardless, this Court has held that, where a defendant fails to raise the statutory right to a speedy trial, he or she waives his or her right to complain about not being tried within 270 days of arraignment. Walton v. State, 678 So.2d 645, 649-50 (Miss.1996). This is especially true whenever the defendant fails to show that he was prejudiced by not being tried within the 270-day period. Guice, 952 So.2d at 141-42 (citing Walton, 678 So.2d at 650). McBride, as already discussed, has shown only minimal, if any, prejudice here.
¶ 38. Because McBride failed to assert his statutory right to a speedy trial, and because he showed no prejudice in the ability to conduct his defense, we find that he acquiesced in the delay and waived his right to now complain that his statutory right to a speedy trial was violated.
II. The evidence was sufficient for a rational juror to have found beyond a reasonable doubt that the sexual battery occurred on a date within reasonable limits, or reasonably near, the dates alleged in the indictment and offense-tracking instruction.
¶ 39. In reviewing a challenge to the sufficiency of the evidence, “the critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed....’” Bush v. State, 895 So.2d 836, 843 (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). The question is not whether this Court believes the evidence at trial established guilt beyond a reasonable doubt. Bush, 895 So.2d at 843 (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The relevant question, rather, “ ‘is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.’ ” Bush, 895 So.2d at 843 (quoting Jackson, 443 U.S. at 315, 99 S.Ct. 2781). We are to reverse if the facts and inferences “ ‘point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty....”’ Bush, 895 So.2d at 843 (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)). But if the evidence is of such weight and quality that “ ‘having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,’ ” then it will be deemed to have been sufficient. Bush, 895 So.2d at 843 (quoting Edwards, 469 So.2d at 70).
¶ 40. McBride argues that the State failed to prove that the sexual battery occurred “on or about or between January 2002 and December 2005,” as charged in both the indictment and offense-tracking instruction. He argues that the only evidence introduced at trial was that the victim, Mary Jones,[2] was eleven years old during the time of the sexual battery, and since she was born on November 11, 1989, the incident could not have occurred within the range of dates set forth in the indictment and offense-tracking instruction.
¶ 41. Section 97-3-95, the statute under which McBride was indicted, contains two *149 subsections. Miss.Code Ann. § 97-3-95 (Rev.2006). The indictment did not specify which of these subsections under which the State intended to proceed. It simply stated that:
1. “on or about or between January 2002, and December 2005”;
2. “did unlawfully, wilfully and felo-niously”;
3 “engage in sexual penetration”;
4. “with [Mary Jones], a female child under the age of fourteen (14) years”;
5. “by inserting his penis into her vagina”;
6. “when he ... was her father.... ”
¶ 42. At trial, the court issued an offense-tracking instruction, numbered C-11, which provided that:
The Defendant, JERRY MCBRIDE, has been charged by indictment with the crime of Sexual Battery.
If you find from the evidence in this case beyond a reasonable doubt that:
1. the Defendant, JERRY MCBRIDE, on or about or between January 2002 and December 2005, in Coahoma County, Mississippi, did unlawfully, willfully!,] and felo-niously, engage in sexual penetration by inserting his penis into the vagina of [Mary], and
2. that [Mary] was a female child,
3. under the age of fourteen (14) years of age,
4. when the Defendant, JERRY MCBRIDE, was the father of [Mary], then you shall find the Defendant guilty of Sexual Battery.
If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the Defendant not guilty.
¶ 43. Both the indictment and the offense-tracking instruction, therefore, reflected that the sexual battery occurred “on or about or between January 2002 and December 2005.” But the offense could not have occurred within these specific dates if Mary had been eleven years old at the time it happened.
¶ 44. Mary maintained at trial that she was “around eleven” at the time of the first incident. She added at one point, though, that she “could have been twelve.” Mary acknowledged that, in December 2005, she told a Department of Human Services (DHS) interviewer that she had been thirteen or fourteen at the time of the first incident. She explained at trial, however, that she had not been sure of her age at the time of the DHS interview. Mary’s difficulty recalling exact times and dates is not uncommon in child-abuse cases. Valentine v. Konteh, 395 F.3d 626, 632 (6th Cir.2005).
¶ 45. Mary turned twelve on November 11, 2001. Thus, if she had been eleven at the time of the first incident, the incident would have had to have occurred between November 11, 2000, and November 11, 2001. The sexual battery then feasibly could have occurred the first week or so of November 2001 — two months or so before January 2002.
¶ 46. We must determine whether this variance in dates between the indictment and offense-tracking instruction and the proof adduced at trial renders the evidence insufficient to support McBride’s conviction. For the reasons discussed below, we conclude that it does not.
¶ 47. In Daniels v. State, 742 So.2d 1140, 1142-43 (Miss.1999), a defendant challenged the sufficiency of the evidence based on an alleged variance between the dates in the indictment and the date proven at trial. In that case, the Court concluded that there was, in fact, sufficient *150 evidence to support that the crime had occurred within the timeframe set forth in the indictment. Id. at 1143. But the Court added it would have upheld the conviction even if the dates alleged in the indictment had been incorrect. Id. The Court explained that “an allegation as to the time of the offense is not an essential element of the offense charged in the indictment and, “within reasonable limits, proof of any date before the return of the indictment and within the statute of limitations is sufficient.’ ” Id. (quoting United States v. Cochran, 697 F.2d 600, 604 (5th Cir.1983)).
¶ 48. According to Cochran, the Fifth-Circuit case quoted in Daniels, the date(s) proven at trial may “within reasonable limits” vary from date(s) alleged in the indictment. Cochran, 697 F.2d at 604. In defining “reasonable limits,” a court must consider whether the defendant had adequate notice of the charge(s) against him so that he was able to prepare his defense and not be surprised at trial. Id. The court must also consider whether the defendant is protected against a second prosecution for the same offense. Id. Basically, the variance in dates must not unfairly prejudice the defendant. See Cochran, 697 F.2d at 604.
¶ 49. In this case, the State’s failure to establish that the sexual battery occurred precisely within the January 2002 to December 2005 timeframe did not prejudice McBride in any way. For example, he never asserted an alibi defense; thus, any failure to prove the alleged dates could not have affected or hampered such a defense. Moreover, he does not allege inadequate notice of the charges against him, contend that he was unfairly surprised, or raise double-jeopardy concerns.
¶ 50. As already discussed, if Mary had been eleven at the time of the first incident, the crime plausibly could have occurred within two months or so of January 1, 2002. Given the lack of prejudice here, we find that a period of two months is within reasonable limits of the January 2002 to December 2005 timeframe.
¶ 51. The indictment and offense-tracking instruction’s use of “on or about” language adds additional support for our decision. Where, as here, “on or about” language is used in an indictment, the government is not required to prove an exact date(s) so long as a date reasonably near is established. United States v. Mata, 491 F.3d 237, 243 (5th Cir.2007) (quoting United States v. Valdez, 453 F.3d 252, 260 (5th Cir.2006)); see also Real v. Shannon, 600 F.3d 302, 308 (3d Cir.2010); United States v. Benson, 591 F.3d 491, 497 (6th Cir.2010); United States v. Hinton, 222 F.3d 664, 672-73 (9th Cir.2000); United States v. Castillo, 140 F.3d 874, 885 (10th Cir.1998); United States v. Reed, 887 F.2d 1398, 1403 (11th Cir.1989); United States v. Leibowitz, 857 F.2d 373, 379 (7th Cir.1988); United States v. Nersesian, 824 F.2d 1294, 1323 (2d Cir.1987).
¶ 52. Because a period of two months is within reasonable limits of, or reasonably near, the January 2002 to December 2005 timeframe, we find that the variance between the indictment and offense-tracking instruction and the proof at trial does not render the evidence insufficient to support McBride’s conviction.
CONCLUSION
¶ 53. Because we find that neither McBride’s constitutional nor statutory right to a speedy trial was violated, and because the evidence was sufficient to enable a reasonable juror to conclude that the sexual battery occurred within reasonable limits, or reasonably near, the timeframe set forth in the indictment, we *151 affirm the trial court’s conviction and sentence.
¶ 54. CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED. SENTENCE SHALL RUN CONSECUTIVELY WITH ANY AND ALL SENTENCES PREVIOUSLY IMPOSED.
CARLSON, P.J., RANDOLPH, LAMAR AND PIERCE, JJ„ CONCUR. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ. KING, J., NOT PARTICIPATING.

. "Hybrid representation consists of ‘the participation by an attorney in the conduct of the trial when the defendant is proceeding pro se. " Hearn v. State, 3 So.3d 722, 734 (Miss.2008) (quoting Metcalf v. State, 629 So.2d 558, 562-63 (Miss.1993)).

. A fictional name is used to protect the victim's identity.