# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01505-COA

AUNDRA JOHNSON                                                        APPELLANT

v.

STATE OF MISSISSIPPI                                                   APPELLEE

DATE OF JUDGMENT:              08/15/2018
TRIAL JUDGE:                   HON. MICHAEL M. TAYLOR
COURT FROM WHICH APPEALED:     PIKE COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:       OFFICE OF STATE PUBLIC DEFENDER
                               BY: HUNTER NOLAN AIKENS
                                   GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: LAURA HOGAN TEDDER
NATURE OF THE CASE:            CRIMINAL - FELONY
DISPOSITION:                   AFFIRMED - 05/19/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE J. WILSON, P.J., TINDELL AND C. WILSON, JJ.

### TINDELL, J., FOR THE COURT:

¶1.    On August 15, 2018, Aundra Johnson was convicted of first-degree murder and possession of a firearm by a felon in the Pike County Circuit Court.  The circuit court sentenced him to life imprisonment for first-degree murder and to serve ten years for the crime of being a felon in possession of a firearm in the custody of the Mississippi Department of Corrections (MDOC), with the sentences ordered to run consecutively. Johnson filed an unsuccessful motion for judgment notwithstanding the verdict or, alternatively, a new trial.  Johnson now raises one issue on appeal: whether his constitutional

right to a speedy trial was violated. Upon review, we find no error and affirm Johnson's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶2. In November 2016, Johnson and Tyshekia Hughes lived together in a trailer on a plot of land owned by Tyshekia's mother. Tyshekia's trailer was surrounded by other trailers owned by Tyshekia's family members, including Tyshekia's brother Antonio Hughes. On November 19, 2016, Tyshekia threw a birthday party for her fifteen-year-old daughter. During the party, the police arrived at Antonio's trailer upon receiving a domestic-disturbance report regarding Antonio and his girlfriend Calvanisha. When the police arrived, Tyshekia went to Antonio's trailer, and Johnson went inside a different trailer. Inside Antonio's trailer, Tyshekia and Calvanisha got into an argument. Tyshekia removed her jacket as if to get into a physical altercation with Calvanisha, but the police intervened and separated Tyshekia and Calvanisha.

¶3. As Tyshekia was walking back to her trailer, she encountered Johnson, and the two began to argue about Tyshekia's jacket. Several witnesses then saw Johnson pull out a gun and shoot Tyshekia in the head. The police officers heard the gunshot from Antonio's trailer and ran outside. They found Tyshekia's body on the ground next to a vehicle in front of her trailer. The police then chased Johnson between several trailers and across a ditch until he finally stopped and faced them with his hands in his pockets. The police ordered Johnson to put his hands in the air. As Johnson raised his hands up, the police heard a loud "thump" and discovered a handgun on the ground. Johnson began to flee again. The police soon

2

apprehended Johnson and arrested him.

¶4. Almost thirteen months later, on December 15, 2017, a Pike County grand jury indicted Johnson for first-degree murder and for being a felon in possession of a firearm. Johnson was arraigned on January 22, 2018. On March 20, 2018, upon Johnson's own motion, the circuit court ordered Johnson to undergo a mental examination to be performed on April 12, 2018. Johnson's original trial date was set for May 15, 2018, but the circuit court allowed for a continuance in order for Johnson's mental evaluation scheduled to take place.

¶5. On August 6, 2018, Johnson filed a motion to dismiss his indictment for lack of a speedy trial, which the circuit court denied. Johnson's trial took place on August 14-15, 2018, and he was ultimately convicted for first-degree murder and possession of a firearm by a felon. The circuit court sentenced Johnson to life imprisonment for the murder conviction and to serve ten years in the MDOC's custody for the conviction of possession of a firearm by a felon, with the sentences ordered to run consecutively. Aggrieved, Johnson now appeals.

**STANDARD OF REVIEW**

¶6. Johnson's sole issue on appeal is that his constitutional right to a speedy trial was violated. Therefore, our standard of review is as follows:

> Review of a speedy trial claim encompasses a fact question of whether the trial delay rose from good cause. Under this Court's standard of review, this Court will uphold a decision based on substantial, credible evidence. If no probative evidence supports the trial court's finding of good cause, this Court will ordinarily reverse.

3

*DeLoach v. State*, 722 So. 2d 512, 516 (¶12) (Miss. 1998) (citations omitted).

## ANALYSIS

¶7.    Johnson argues that his constitutional right to a speedy trial was violated because approximately 633 days passed between his arrest and his trial.[1]  "The Sixth Amendment to the United States Constitution provides an accused the right to a speedy and public trial[,] [a]nd the Mississippi Constitution establishes an almost identical protection."  *Johnson v. State*, 68 So. 3d 1239, 1241 (¶6) (Miss. 2011) (internal quotation marks omitted).  We analyze potential speedy-trial violations using the balancing test prescribed by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  Using the *Barker* test, this Court must balance the following four factors:  (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant.  *Id*.  But "[n]one of these factors is a necessary or sufficient condition to the finding of a violation of the right to a speedy trial; they must be considered together with other relevant circumstances."  *Bateman v. State*, 125 So. 3d 616, 628-29 (¶40) (Miss. 2013).

---

[1] In its appellate brief, the State also claims that Johnson argues that his *statutory* right to a speedy trial was violated.  We can find no such argument in Johnson's brief, and Johnson repeatedly asserts that his *constitutional* right to a speedy trial was violated.  "An analysis of [Johnson's] constitutional right to a speedy trial must be made apart from his statutory right."  *Franklin v. State*, 136 So. 3d 1021, 1032 (¶42) (Miss. 2014).  But even if the statutory argument could be inferred from Johnson's brief, such argument lacks merit.  Mississippi Code Annotated section 99-17-1 (Rev. 2007) requires that all indictments be brought to trial within 270 days after a defendant's arraignment.  As stated, Johnson was arraigned on January 22, 2018, and his trial took place on August 14-15, 2018.  This makes the time between Johnson's arraignment and trial 205 days, and therefore the State did not violate Johnson's statutory right to a speedy trial.

### I.     Length of Delay

¶8.    "A full *Barker* analysis is warranted only if the delay is presumptively prejudicial."

*McBride v. State*, 61 So. 3d 138, 142 (¶7) (Miss. 2011).  The Mississippi Supreme Court has

held that the length of the delay is presumptively prejudicial if the delay is eight months or

more.  *Id*; *see also Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989).  But a presumptively

prejudicial delay does not mean that the defendant experienced actual prejudice, as actual

prejudice is determined at a later point in the *Barker* analysis.  *Johnson*, 68 So. 3d at 1242

(¶7).  Rather, a presumptively prejudicial delay means that we must continue our *Barker*

analysis.  *Id*.

¶9.    "A formal indictment or information or an arrest—whichever first occurs—triggers

the constitutional right to a speedy trial."  *McBride*, 61 So. 3d at 142 (¶7).  Johnson's

constitutional right to a speedy trial attached at the time of his arrest on November 19, 2016.

Johnson was not indicted until December 15, 2017, and his trial commenced on August 14,

2018.  Because approximately 633 days passed between his arrest and his trial, the delay in

this case is presumptively prejudicial, and we must continue our *Barker* analysis.

### II.     Reasons for Delay

¶10.    Once we determine that the delay is presumptively prejudicial, "the burden shifts to

the prosecution to produce evidence justifying the delay."  *Bateman*, 125 So. 3d at 630 (¶43).

The Supreme Court in *Barker* provided the following guidelines:

> [D]ifferent weights should be assigned to different reasons.  A deliberate
> attempt to delay the trial in order to hamper the defense should be weighted
> heavily against the government.  A more neutral reason such as negligence or
> overcrowded courts should be weighted less heavily but nevertheless should

be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531 (footnote omitted).

¶11. Johnson cites to two main periods of delay in this case. The first occurred between the time of Johnson's arrest on November 19, 2016, and his indictment on December 15, 2017. The second time-period is between is his motion for a mental evaluation on March 19, 2018, and his trial on August 14, 2018. Because "delays attributable to obtaining a mental evaluation requested by the defense is not counted against the State," the delay between March 19, 2018, and August 14, 2018, should not be weighed against the State. *Perry v. State*, 233 So. 3d 750, 757 (¶15) (Miss. 2017).

¶12. Johnson primarily takes issue with the delay of approximately 392 days between his arrest and his indictment and argues that this delay should be assessed against the State. The State argues, however, that it did not have Tyshekia's autopsy report in its case file to present to the grand jury during this period of delay. In defense of Johnson's motion to dismiss, the State argued to the circuit court that the autopsy report was not completed until June 24, 2017, and the State did not receive the autopsy report from the sheriff's department until November 13, 2017. The State further argued that, upon receiving the autopsy report, Johnson's case was placed before the next grand jury, the week of December 15, 2017. Now on appeal, the State contends that this reasoning constitutes good cause for delay. The State argues that, without the autopsy report, the grand jury could have no-billed Johnson's case or that there would have been reasonable doubt in the grand jurors' minds as to who killed

6

Tyshekia.

¶13.   The circuit court ultimately denied Johnson's motion to dismiss, but it assessed this period of delay against the State, stating:

> The Court finds that all of the periods, relevant periods, *except for the time from the completion of the autopsy until the time it was presented to the grand jury*, fall in good cause, either for waiting for evidence from the State Crime Lab or waiting for mental eval[uation].
>
> . . . .
>
> The Court will caution the State that the period of time between the completion of the autopsy and the presentation to the grand jury is wholly and entirely within the power of the State to fix.  For future reference, the Sheriff's Department *is the State*.  And if the Sheriff's Department is in possession of the necessary information and grand jury – regardless, the State has considerable authority and power over setting the grand jury's schedule and grand jury dates.  And if the State, through the Sheriff's Department, chooses to sit on cases and present them to a grand jury, that's at the State's peril because the Sheriff's Office is the State.  And I will caution the State that that *is not good cause*[.]
>
> . . . .
>
> And the Court recognizes that some degree of time is necessary to get things in order, but the mere fact that the file is not at the District Attorney's office would not in a future case necessarily constitute [good] cause for not going forward with the prosecution.

(Emphasis added).

¶14.   We agree with the circuit court's reasoning here.  While the State understandably needs time "to get things in order," it also has the important responsibility of ensuring that the defendant is brought to trial in a timely manner.  *Smith*, 812 So. 2d at 1049 (¶12).  For this reason, Mississippi courts have held that significant delays attributable to the State's own negligence or oversight are to be assessed against the State, even if less heavily than

7

intentional delays. *See Scott v. State*, 231 So. 3d 995, 998-99 (¶¶10-17) (Miss. 2017) (weighing this factor against the State after a 680-day delay was found to be primarily caused by a police department's negligence); *McBride*, 61 So. 3d at 144 (¶19) (weighing this factor against the State after the State's general negligence and oversight caused significant delay in a defendant's trial); *Perry v. State*, 637 So. 2d 871, 874-75 (Miss. 1994) (weighing this factor against the State after an eight-month delay resulted from the State's failure to obtain a substance report from the Mississippi Forensics Laboratory). The State allowed almost five months to pass before obtaining the autopsy report from the Sheriff's Department, which is another State agency. We cannot punish the defendant for the State's oversight here. We agree with the circuit court that the State's reason for delay does not meet the threshold for good cause, but there is no evidence of intentional or deliberate delay. As such, we find that substantial evidence supports the circuit court's determination that this factor should be weighed slightly against the State.

### III. Assertion of Right to Speedy Trial

¶15. Next, we turn our attention to whether Johnson properly asserted his right to a speedy trial. "Although it is the State's duty to ensure that the defendant receives a speedy trial, a defendant has some responsibility to assert this right." *Bateman*, 125 So. 3d at 630 (¶49). Generally, "[a] defendant's assertion of his right to a speedy trial weighs in his favor[,] . . . [but] a defendant's failure to assert his right will weigh against him." *Brown v. State*, 285 So. 3d 671, 682 (¶47) (Miss. Ct. App. 2019), *cert. denied*, 284 So. 3d 753 (Miss. 2019). Johnson argues that this factor should weigh in his favor because (1) the State possesses the

burden of bringing defendants to trial and (2) he never waived his speedy-trial rights. The State argues that this factor should weigh against Johnson because his only action asserting his rights was his motion to dismiss the indictment one week before trial. The circuit court also found that Johnson had failed to invoke his rights by taking no action after his arraignment other than to move for a mental evaluation.

¶16. We have held that "a demand for a speedy trial is distinct from a demand for dismissal due to violation of the right to a speedy trial." *Polk v. State*, 205 So. 3d 1157, 1166 (¶36) (Miss. Ct. App. 2016) (citing *McBride*, 61 So. 3d at 181 (¶20)). "A motion for dismissal seeks discharge, *not trial*." *Id*. (emphasis added). In *Polk*, the defendant filed a motion to dismiss his indictment but not a motion demanding a speedy trial. *Id*. at (¶37). Also, the defendant's motion to dismiss "was the first time [the defendant] complained about the delay in his trial." *Id*. We found that because the defendant's motion sought dismissal rather than a speedy trial, the third *Barker* factor should be assessed against him. *Id*.

¶17. Johnson's actions here are the same as in *Polk*. On appeal, Johnson adamantly takes issue with the delay between his arrest on November 19, 2016, and his indictment on December 15, 2017. But, as the circuit court found, the only action Johnson took in the months after his indictment and arraignment was his motion for mental evaluation and continuance to allow for the mental evaluation. It wasn't until August 6, 2018, just one week prior to trial, that Johnson moved to dismiss his indictment for violation of a speedy trial. Furthermore, the record does not indicate that Johnson ever filed a motion *demanding* a speedy trial. Therefore, we agree with the circuit court that Johnson failed to properly invoke

his rights and, as in *Polk*, this factor weighs against Johnson.

### IV. Prejudice to the Defendant

¶18. Finally, we examine whether Johnson experienced any actual prejudice in the delay of his trial. As for the fourth *Barker* factor, "the appellate court is to consider prejudice to the defendant, bearing in mind three interests: (1) prevent oppressive pretrial incarceration; (2) minimize anxiety and concern of the accused; and (3) limit the possibility that the defense will be impaired." *Polk*, 205 So. 3d at 1166 (¶38) (citing *Johnson*, 68 So. 3d at 1244 (¶16)). Because Johnson "is clearly in the best position to show prejudice under [this] prong," the burden falls on him. *Id*.

¶19. In its ruling, the circuit court found that there had been no showing of actual prejudice against Johnson. On appeal, Johnson's only argument is that two of the prejudice factors—protection against oppressive pretrial incarceration and minimizing the anxiety and concern of the accused—weigh in his favor. But Johnson does not expound much further on this argument. Rather, he only states that "[a]lthough the record does not reveal a specific way in which Johnson's defense was impaired, his ability to build a defense was inherently prejudiced by the fact that he was incarcerated" during the delay. Johnson merely repeats two of the three factors without providing any evidence to support his argument, which the Mississippi Supreme Court has found to be insufficient to prove prejudice. *Taylor v. State*, 162 So. 3d 780, 787 (¶16) (Miss. 2015). As the circuit court stated, Johnson fails to show *how* his defense was impaired by the delay. We find no error in the circuit court's determination that Johnson failed to prove actual prejudice under *Barker*, and therefore, this

10

factor weighs against him.

## CONCLUSION

¶20. To summarize, the first *Barker* factor weighs in favor of Johnson because approximately 633 days passed between his arrest and trial; therefore, we consider the delay to be presumptively prejudicial. The second factor weighs in favor of Johnson and against the State, but not heavily because there is no evidence of intentional or deliberate delay. The third factor weighs against Johnson because we find that: (1) his only action was his motion for dismissal one week before his trial and (2) he moved for dismissal and not for a speedy trial. Finally, Johnson offers no proof to substantiate his claim of actual prejudice and, therefore, this factor weighs against him.

¶21. The Mississippi Supreme Court has held that "where, as here, the delay is neither intentional nor egregiously protracted, and where there is a complete absence of actual prejudice, the balance is struck in favor of rejecting [the defendant's] speedy-trial claim." *Taylor*, 162 So. 3d at 787 (¶17) (citing *Watts v. State*, 733 So. 2d 214, 236 (¶67) (Miss. 1999)). After thoroughly reviewing the record and carefully weighing all the *Barker* factors, we find that Johnson's right to a speedy trial was not violated. We therefore find no error in the circuit court's analysis of the *Barker* factors and affirm Johnson's convictions and sentences.

¶22. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, McCARTY AND C. WILSON, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE**

11

**WRITTEN OPINION.**