## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00516-COA

ALAN BAUCOM A/K/A ALAN CHARLES BAUCOM          APPELLANT

v.

STATE OF MISSISSIPPI          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/27/2023 |
| TRIAL JUDGE: | HON. MICHAEL PAUL MILLS JR. |
| COURT FROM WHICH APPEALED: | PONTOTOC COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAUREN GABRIELLE CANTRELL |
| DISTRICT ATTORNEY: | JOHN DAVID WEDDLE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/18/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., GREENLEE AND EMFINGER, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1. Alan Baucom was convicted by a Pontotoc County Circuit Court jury of one count of sexual battery (Count I) and two counts of fondling (Counts II and III). The circuit court sentenced him to serve consecutive sentences of forty years in the custody of the Mississippi Department of Corrections for Count I, fifteen years with fifteen years suspended for Count II, and fifteen years with fifteen years suspended for Count III. The circuit court also required Baucom to register as a sex offender and prohibited him from contacting the victim

or the victim's family.[1]  On appeal, Baucom claims that the evidence was insufficient to support the jury's verdict.  Specifically, he argues that the State failed to present evidence that the sexual abuse occurred between January 1, 2019, and February 20, 2019—the dates charged in the indictment.  We affirm Baucom's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶2.　　On February 20, 2019, eight-year-old Ryan told his mother that Alan Baucom touched him and did inappropriate things to him when he spent the night at his friend Carson's house and that it had been happening for a long time.[2]  Carson was Ryan's next-door neighbor who lived in a three-bedroom double-wide trailer with his (Carson's) father and stepmother (Chris and Lisa), his step-uncle (Baucom), and Carson's four sisters.  Lisa and Baucom's father (Alan Huffman) and a man named Stacy McCammon also lived in the trailer at various times.[3]  At some point, four men—Chris, Baucom, Huffman, and McCammon—lived in the trailer at the same time.  After Ryan's disclosure, Carson's parents were notified of the allegations, and a police report was made.

---

[1] Baucom was also ordered to pay a $1,000 fine, $200 to the Pontotoc County Sheriff's Office Investigative Fund, $200 to the First Circuit District Attorney's Office Investigative Fund, $1,000 to the Mississippi Children's Trust Fund, $1,000 to the Victims of Human Trafficking Fund, and $434.50 in court costs.

[2] We alter names in this opinion to protect the identities of all minor children involved.

[3] Huffman was present from February 2018 until October 2018.  McCammon was "in and out" during a time when he and his wife were having issues, and he was using methamphetamine.

¶3. Meanwhile, Ryan's grandfather confronted Baucom about the allegations, and Baucom gathered his belongings and left the home. Deputy Michael Gentry with the Pontotoc County Sheriff's Department testified that Baucom was arrested as he was walking alongside the highway. Deputy Gentry believed that Baucom had some knives in his possession at the time of his arrest.

¶4. In April 2019, Baucom was indicted for one count of sexual battery and two counts of fondling. Specifically, the indictment alleged that Baucom put Ryan's penis in his mouth "on or between January 1, 2019 and February 20, 2019" (Count I), touched Ryan with his penis "on or between January 1, 2019 and February 20, 2019" (Count II), and made Ryan handle and/or rub with his hands Baucom's penis "on or about January 1, 2019" (Count III).

¶5. At the time of Baucom's trial, Ryan was twelve years old. He testified that he was eight years old when something inappropriate first occurred. Ryan was born in September 2010; therefore, according to Ryan's testimony, the sexual abuse would have started sometime during or after September 2018. Ryan indicated that the sexual abuse began when Baucom "humped" him while they were in the same bed. Ryan testified that they were not wearing clothes and that Baucom's penis touched his butt. According to Ryan, this occurred more than once. Ryan testified that Baucom also humped him in one of the sheds on the property. He stated that they were in the shed during the daytime and that he and Baucom were alone. Ryan testified that Baucom also put Ryan's penis in Baucom's mouth while they were in the shed and while they were in Carson's bedroom. And Baucom made Ryan touch

3

Baucom's penis while they were in the trailer. Ryan could not recall how many times the sexual abuse had occurred, but he estimated that it had occurred approximately five to ten times. Finally, Ryan testified that he saw Baucom the week before he disclosed the sexual abuse to his mother, but no sexual abuse had occurred during the weekend of the disclosure.

¶6. Carson, who was ten years old at the time of trial, testified that he had shared a bedroom with Baucom. According to Carson, he and Ryan would get in the bed with Baucom "[w]hen he told [them] to get up there," and Carson testified that Baucom told them to take their clothes off. Carson confirmed that Baucom told them to touch his penis and that Baucom touched their penises. He also confirmed that Baucom put his mouth on their penises and testified that Baucom made them put their mouths on his penis. Carson testified that the sexual abuse happened multiple times and that it occurred after everyone went to sleep. According to Carson, the sexual abuse occurred in the bedroom. He did not recall Baucom and Ryan going into the shed together. When asked if the last time something inappropriate occurred was before or after Christmas, Carson responded, "I would say before."

¶7. Misty Applegate with the Family Resource Children's Advocacy Center testified about Ryan's forensic interview, which was played for the jury. According to Applegate, Ryan's statements were consistent with a child who had been sexually abused. Applegate noted that Ryan described sensory details, which would have been extremely difficult for another person to coach. She also noted that Ryan was able to demonstrate certain motions

4

associated with the sexual abuse.

¶8.     After the State rested, the defense moved for a directed verdict, which was denied. Baucom called several witnesses to testify, including Lisa (Carson's stepmother), two of Carson's half-sisters, Lisa and Baucom's father (Huffman), and McCammon.  Baucom's theory of defense seemingly was that someone else who lived in the trailer must have committed the alleged crimes.  Alternatively, testimony was presented that Baucom identified as gay, and he presented evidence that Ryan's father had made derogatory comments about people who identified as gay—seemingly suggesting that the allegations against him had been fabricated.

¶9.     Lisa and Huffman testified that Baucom moved into the residence in June 2018. Although Carson testified that he shared a room with Baucom, two of his half-sisters testified that Baucom slept in the living room during the sleepovers.  Huffman similarly testified that he shared a room with Carson and that Baucom slept in the living room.  However, Huffman acknowledged that he and Baucom shared a bed a few times and that there may have been a time when he, Baucom, Carson, and Ryan slept in the bedroom together.  Lisa testified that Baucom sometimes slept in the living room and sometimes in the bedroom with Carson and Huffman.

¶10.    There was a lot of testimony presented about when Ryan's and Carson's sleepovers occurred and the frequency with which they occurred despite Ryan's testimony indicating that the sexual abuse had also occurred during the daytime.  Ryan's mother testified that the

sleepovers occurred often and usually on the weekends. Similarly, Ryan testified that he spent the night at Carson's house on most weekends. Two of Carson's half-sisters also confirmed that Ryan spent the night on weekends. However, Lisa testified that she did not allow sleepovers while school was in session, which included weekends. According to Lisa, the only time Ryan would have spent the night was twice during Christmas break, which ended around January 3 or 4, 2019. And she did not recall Ryan staying at her house from early January 2019 to the time of his disclosure around February 20, 2019. At one point, Lisa testified that Ryan had only ever slept over twice. Likewise, Huffman only remembered two or three sleepovers. Nevertheless, Lisa acknowledged that the children came over to play in the afternoons after school, and Huffman testified that Ryan and his siblings played at the house every day.

¶11. After the defense rested, the State made an ore tenus motion to amend the indictment and filed a written motion to amend the indictment to reflect that the alleged crimes occurred "on or between June 1, 2018, and February 20, 2019." The circuit court noted that time was not an essential element of the alleged crimes but ultimately denied the motion because the court could not find authority to support amending an indictment after the defense had rested its case.

¶12. When the State finally rested, the defense renewed its motion for a directed verdict, which was denied. After considering the evidence presented at trial, the jury convicted Baucom of one count of sexual battery and two counts of fondling. Now Baucom appeals.

**DISCUSSION**

¶13. We must decide whether the evidence was sufficient to support Baucom's convictions for sexual battery and fondling. Baucom claims that the State failed to present evidence that the sexual abuse occurred between January 1, 2019, and February 20, 2019—as charged in the indictment.

¶14. "When reviewing a challenge to the sufficiency of the evidence, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *McNair v. State*, 346 So. 3d 512, 517 (¶19) (Miss. Ct. App. 2022) (quoting *Russell v. State*, 296 So. 3d 217, 223 (¶17) (Miss. Ct. App. 2020)). This Court has held that "[t]ime is not an essential element of the crime of sexual battery[.]" *Garlington v. State*, 349 So. 3d 782, 801 (¶60) (Miss. Ct. App. 2022). Nor is time an essential element of the crime of fondling. *Mosby v. State*, 134 So. 3d 850, 854 (¶15) (Miss. Ct. App. 2014). "[D]ifficulty recalling exact times and dates is not uncommon in child-abuse cases." *McBride v. State*, 61 So. 3d 138, 149 (¶44) (Miss. 2011) (citing *Valentine v. Konteh*, 395 F.3d 626, 632 (6th Cir. 2005)). So "[w]ithin reasonable limits, proof of any date before the return of the indictment is sufficient." *Mosby*, 134 So. 3d 850 at 853 (¶11) (quoting *Faulkner v. State*, 109 So. 3d 142, 149 (¶28) (Miss. Ct. App. 2013)).

¶15. At trial, testimony was presented that Baucom moved into the residence in June 2018. Ryan testified that the first time something inappropriate happened was when he was eight

7

years old, which would have been on or after September 23, 2018—only a few months before the time frame charged in the indictment. Although there was a lot of evidence presented about when Ryan's and Carson's sleepovers occurred, the State presented evidence that the sexual abuse did not occur *only* in Carson's bedroom during the sleepovers. Ryan indicated that he was sexually abused by Baucom when they were alone in the shed during the daytime. Carson's stepmother confirmed that Ryan came over to play after school in the afternoons, and Carson's step-grandfather testified that Ryan and his siblings came over to play every day.

¶16. "Our supreme court has held that a child sex victim's testimony that the abuse occurred within two months of the charged date was reasonably near, or within reasonable limits of, the charged time frame to support a sexual battery conviction." *Faulkner*, 109 So. 3d at 149 (¶28) (citing *McBride*, 61 So. 3d at 150 (¶¶49-52)). We similarly find that the sexual battery and fondling in this case "was sufficiently near the charged time frame to sustain the convictions[.]" *Id*. Because there was sufficient evidence to support his convictions, we affirm Baucom's convictions and sentences.

¶17. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**