# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-KA-01267-SCT

*MATTHEW BLAKE COURTNEY a/k/a MATTHEW COURTNEY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/17/2017 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| TRIAL COURT ATTORNEYS: | MICHAEL G. DYKES |
| | ROBERT J. KNOCHEL |
| | DAVID C. FUTCH |
| COURT FROM WHICH APPEALED: | GREENE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: MOLLIE M. McMILLIN |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KAYLYN HAVRILLA McCLINTON |
| DISTRICT ATTORNEY: | ANTHONY LAWRENCE, III |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/02/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     Matthew Blake Courtney appeals his conviction of one count of sexual battery in violation of Mississippi Code Section 97-3-95(1)(a) (Rev. 2014).  The trial court sentenced Courtney to serve a period of twenty-five years.  Courtney argues that the statute of limitations barred his sexual battery conviction.  Alternatively, Courtney argues that the delay in bringing him to trial violated his Sixth Amendment constitutional right to a speedy trial.

The record is devoid of Courtney having raised the statute of limitations argument before now. Accordingly, Courtney has waived the defense. As to the alternative argument of speedy trial, the Court looks at the traditional speedy-trial analysis and holds that the State did not deny Courtney a speedy trial. Therefore, we affirm Courtney's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2. On or about November 2, 2012, the victim and her boyfriend went to a party at twenty-one-year-old Dustin McLeod's house in Greene County. The victim and her boyfriend were both fifteen years old. They and their friends shared a half-gallon of liquor and became highly intoxicated at the party. The victim passed out under a tree. Her very drunk boyfriend enlisted the help of Harley Prentiss, McLeod, and Courtney to move the victim from the ground to a small camper behind the trailer home on the property. After the victim was placed on the bed in the camper, her boyfriend laid down beside her; he did not think anyone else was inside the camper with them. He then became sick and exited the camper to vomit. He later testified that Courtney was outside the camper and told him not to go back inside since he was sick. When the victim's boyfriend attempted to get back in the camper, someone on the inside pulled the door shut, and the boyfriend heard a male laughing inside the camper.

¶3. When the boyfriend awoke before dawn, he entered the camper and saw the victim lying on the bed and Prentiss asleep on the couch. When Prentiss woke up around seven o'clock in the morning, he and the boyfriend realized that the victim was unresponsive.

2

Prentiss told the victim's boyfriend that he and the victim needed to leave. Allen, Prentiss, and another partygoer dropped the two fifteen-year-olds off at a cemetery. The boyfriend contacted the victim's sister, who immediately came to pick them up. According to the victim's sister, when she arrived, she thought that the victim was dead and noticed that while the victim's clothes were on, they were not fastened as they should have been. The victim's sister rushed her across the street to the hospital; caregivers transferred her to the University of South Alabama Hospital in Mobile, Alabama.

¶4. While the victim was in a medically induced coma in Mobile, doctors noticed injuries consistent with sexual contact; the hospital contacted law enforcement. A rape kit was performed, and stains on the victim's jeans were tested against DNA samples from several partygoers, including Courtney. One sample was consistent with Prentiss's DNA; Courtney's and McLeod's DNA could not be excluded from a different sample.

¶5. McLeod testified at Courtney's trial. Prentiss told McLeod and Courtney that Prentiss had sex with the victim after carrying her to the camper. McLeod said that Courtney walked to the camper and said that he "was going in next." McLeod further testified that he saw the camper rock back and forth like it did earlier when Prentiss was inside. McLeod said that, when Courtney was finished, Courtney exited the camper and told him that it was his turn to "go get you some now." McLeod stated that Allen went in next and that McLeod went in after that.

¶6. The victim denied consenting to engage in sex with anyone at the party and testified that she had no memory of the assaults. The last memory she had from the party was sitting

3

under the tree with her friends.

### 1. The Youth Court Proceedings

¶7. On the day of the crime, Courtney had been seventeen years old for two weeks. DNA testing results implicating Courtney were returned on February 20, 2013. More than a year later, on May 2, 2014, a petition was filed in the youth court stating that, "on or about 11/02/2012, in Greene County, Mississippi, Matthew Blake Courtney did purposefully, knowingly, and unlawfully commit the act of sexual battery of another person without his or her consent in violation of § 97-3-95(1)(a) . . . Youth did willfully unlawfully, and feloniously engage in sexual penetration of [L.C.] without her consent." Three days later, a motion to transfer the petition to the circuit court was filed in youth court. Thirteen months after the motion was filed, on June 30, 2015, the youth court ordered the transfer, and Courtney's case was transferred to circuit court.

### 2. Circuit Court Proceedings

¶8. After Courtney's case was certified to circuit court, an arrest warrant was issued on July 8, 2015. On September 18, 2015, a Greene County grand jury indicted Courtney for sexual battery. Courtney was scheduled for arraignment in November, but the circuit court ordered an agreed continuance until December so that Courtney could retain counsel. The record shows confusion about who was representing Courtney, and the scheduled arraignment in December was further continued to February 2016. In February, Courtney still lacked counsel. The circuit court then appointed David Futch. The circuit court set a status hearing for April 7, 2016, and trial for May 23, 2016. Courtney then waived

4

arraignment on April 7, 2016, and pleaded not guilty.

¶9. Courtney attempted to invoke his right to a speedy trial on May 11, 2016, by including it in the body of his discovery request. Twelve days later, Courtney and the State agreed to a continuance, scheduling trial for August 15, 2016. On the scheduled day of trial, the circuit court granted a joint *ore tenus* motion for additional time to prepare for trial, and a status hearing was set for September 15, 2016, with trial scheduled for November 14, 2016. On September 14, 2016, Futch filed a motion to withdraw as counsel. A day later, the circuit court granted the parties' second joint continuance motion, citing ongoing plea negotiations. A day later, Courtney filed the following three motions: (1) a motion requesting funds for an independent DNA test and DNA expert; (2) a motion to sever his trial from that of his codefendants; and (3) a motion for dismissal for speedy-trial violations.

¶10. While Courtney's motions were pending, the trial date remained in November 2016. Then, the State and Courtney agreed to another order of continuance, citing the need for additional time to prepare for trial. Motion hearings were set for December 2016 and trial for February 27, 2017. Motion hearings were rescheduled to the next term. On February 27, 2017, Courtney made an *ore tenus* motion for a continuance for additional time, and trial was again rescheduled for May 15, 2017. On April 21, 2017, the circuit court denied Courtney's speedy-trial motion. On May 15, 2017, Courtney again moved for a continuance. Trial took place on August 15, 2017, and the jury convicted Courtney.

**STANDARD OF REVIEW**

¶11. The Court "applies a *de novo* standard of review to the statute of limitations."

*Fletcher v. Lyles*, 999 So. 2d 1271, 1276 (¶ 20) (Miss. 2009) (citing *Ellis v. Anderson Tully Co.*, 727 So. 2d 716, 718 (¶ 14) (Rev. 1998)). The standard of review of a speedy-trial claim encompasses a review of the facts and questions whether the trial delay arose from good cause. *DeLoach v. State*, 722 So. 2d 512, 516 (¶ 12) (Miss. 1998). The Court will uphold a decision based on substantial, credible evidence. *Folk v. State*, 576 So. 2d 1243, 1247 (Miss. 1991). The State further "bears the burden of proving good cause for a speedy trial delay, and thus bears the risk of nonpersuasion." *DeLoach*, 722 So. 2d at 516 (¶ 12) (citing *Flores v. State*, 574 So. 2d 1314, 1318 (Miss. 1990)).

## DISCUSSION

### I.      The Statute of Limitations

¶12.    Both parties on appeal agree that a two-year statute of limitations applies to the crime at issue. *See* Miss. Code Ann. § 99-1-5 (Rev. 2015). The parties disagree as to how or if the statute of limitations was affected by the youth court proceedings. Courtney argues that, because he was not arrested for sexual battery until July 8, 2015, a date two years and eight months after the crime on November 2, 2012, the State was barred from prosecuting him. Courtney contends that the statute of limitations had expired on November 3, 2014, before he was arrested or indicted. The State counters that the intake petition for the youth court proceedings served as an indictment against Courtney on May 2, 2014, or fewer than two years from the date of the crime. However, statutes of limitation are affirmative defenses that can be waived if not raised. *Conerly v. State*, 607 So. 2d 1153, 1158 (¶ 17) (Miss. 1992) (holding that statutes of limitation in criminal cases "[are] not jurisdictional but [are] an

6

affirmative defenses that may be waived"). Courtney waived the defense by never raising the statute of limitations issue in the circuit court in a written or *ore tenus* motion.

## II. Constitutional Right to Speedy Trial

¶13. Courtney asserts that the State violated his right to a speedy trial. To determine whether his argument has merit, we must first determine when criminal proceedings against him began. The State contends that criminal proceedings began the date Courtney waived arraignment, April 7, 2016. *See Walker v. State*, 196 So. 3d 978, 982 (¶ 17) (Miss. Ct. App. 2015) ("If a defendant waives arraignment, that date is considered day one on the speedy trial calendar." (quoting *Mayo v. State*, 886 So. 2d 734, 738 (¶ 17) (Miss. Ct. App. 2004))). However, the above-described rule applies to a defendant's statutory right under Mississippi Code Section 99-17-1 (Rev. 2015)—not one's constitutional right. Although throughout its brief the State conflates the speedy-trial statute and the precedent surrounding it with the constitutional right to a speedy trial, Courtney argues only the constitutional right.

¶14. Courtney contends that "[a] formal indictment or information or an arrest—whichever occurs first—triggers the constitutional right to a speedy trial." *McBride v. State*, 61 So. 3d 138, 142 (¶ 8) (Miss. 2011) (citing *United States v. Marion*, 404 U.S. 307, 320 (1971)). Courtney is correct. *Walker*, 196 So. 3d at 984 (¶ 31) (emphasis added) ("Under the statutory speedy-trial analysis, the right attaches at the arraignment or waiver of arraignment, but the *constitutional* right attaches at the arrest or indictment.") "In short, the constitutional right to a speedy trial attaches when a person has been accused." *Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989) (citing *Beavers v. State*, 498 So. 2d 788, 789-90 (Miss. 1986),

7

*overruled on other grounds* by **State v Ferguson**, 576 So. 2d 1252, (Miss. 1991)). Accordingly, Courtney's arrest date, July 8, 2015, serves as day one of the constitutional speedy-trial clock for his criminal proceedings.

¶15. The dissent contends that the clock began running with the filing of the youth court petition. Diss. ¶ 38. However, youth court proceedings are civil in nature. Miss. Code Ann. § 43-21-203(5) (Rev. 2015). "One's right to a speedy trial as a matter of common sense has reference to that point in time when the prosecution may begin to crank up the machinery of the criminal justice process." **Beavers v. State**, 498 So. 2d 788, 790 (Miss. 1986). The State did not do so until Courtney's arrest. We have consistently held that the arrest or indictment of the defendant establishes that point in time. "The constitutional right to a speedy trial attaches 'at the time of a formal indictment or information or else the actual restraints imposed by arrest and *holding to a criminal charge*." **Johnson v. State**, 235 So. 3d 1404, 1417 (¶ 45) (Miss. 2017) (emphasis added) (quoting **Rowsey v. State**, 188 So. 3d 486, 495 (¶ 24) (Miss. 2015)); **Perry v. State**, 419 So. 3d 194, 198 (Miss. 1982) (The constitutional right to a speedy trial attaches "at the time of a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." (citing **Baker v. McCollan**, 443 U.S. 137 (1979); **Dillingham v. United States**, 423 U.S. 64 (1975))).

¶16. The dissent relies on **Breed v. Jones**, 421 U.S. 519 (1975), and **In re Gault**, 387 U.S. 1 (1967), for the proposition that the distinction between civil proceedings in youth court and criminal proceedings in circuit court is illusory. Diss. ¶ 43. In **Breed**, the United States Supreme Court held that juvenile proceedings against a defendant put the defendant in

8

jeopardy, and, accordingly, subsequent criminal actions against the same defendant violated the prohibition against double jeopardy. *Breed*, 421 U.S. at 529-30. In *Gault*, the Court extended the right to remain silent to juvenile court proceedings. *Gault*, 387 U.S. at 55. However, the Supreme Court has never held that a youth court proceeding qualifies as a "criminal prosecution" under the Sixth Amendment such that it would trigger the running of the speedy-trial right. *See McKeiver v. Pennsylvania*, 403 U.S. 528 (1976). In *McKeiver*, the Court concluded that the Sixth Amendment did not mandate a jury trial in juvenile proceedings. *Id.* at 545. The *McKeiver* Court eschewed a rote approach to the classification of juvenile proceedings as either criminal or civil when it wrote, "Little, indeed, is to be gained by any attempt simplistically to call the juvenile court proceeding either 'civil' or 'criminal.' The Court carefully has avoided this wooden approach." *Id.* at 541.

¶17. We decline the dissent's invitation to change our existing law and include youth court petitions in the category with arrests and indictments for purposes of starting the speedy-trial clock. As an initial matter, in *Breed* and *Gault*, the Supreme Court addressed whether due process protections applicable to criminal proceedings would apply in juvenile proceedings, but the question before us today is different. The constitutional right to a speedy trial certainly applies to the underlying prosecution of Courtney. The question raised by the dissent is whether the initial youth court proceedings suffice to begin the speedy-trial clock applicable to Courtney in the criminal proceedings. *Gault*, *Breed*, and their progeny examine the "*parens patriae* interest in preserving and promoting the welfare of the child." *Schall v. Martin*, 467 U.S. 253, 263 (1984) (quoting *Santosky v. Kramer*, 455 U.S. 745, 766

9

(1984)). They do so for the purpose of determining the extent to which due process requires various constitutional protections to apply to juvenile proceedings. We are not faced with deciding whether the right to a speedy trial applies to youth court proceedings but, rather, when the clock begins to run for purposes of the criminal proceedings against Courtney. Accordingly, the *Gault* line of cases is of limited, if any, use.

¶18. Furthermore, in *Breed* and *Gault*, the United States Supreme Court drew heavy parallels between the juvenile and criminal systems at issue in the two cases. For example, in *Breed*, the Court wrote that a juvenile being found to have committed a criminal act in both the criminal and juvenile justice systems involves "consequences includ[ing] both the stigma inherent in such a determination and the deprivation of liberty for many years." *Breed*, 421 U.S. at 529. The *Breed* Court wrote of anxiety and insecurity that can result from a juvenile proceeding. *Id.* Finally, the *Breed* Court wrote that the California juvenile court and criminal court systems shared the "very vital interest in enforcement of criminal laws." *Id.* at 531 (quoting *United States v. Jorn*, 400 U.S. 470, 479 (1971)). There has been no showing here that the purposes of Mississippi's youth court statutes so closely match that of Mississippi's criminal justice system.

¶19. The dissent points out that our youth court statutes define delinquent acts as acts that would be criminal if committed by an adult. Diss. ¶ 44. However, while delinquent acts suffice to invoke both the youth court and adult criminal courts, the similarity does not speak to the purposes of the act focused upon by the *Breed*, *Gault*, and *McKevier* Courts. Mississippi Code Section 43-21-561(5) (Rev. 2015) forbids any youth court adjudication

10

from imposing "any of the civil disabilities ordinarily imposed on an adult because of a criminal conviction . . . ." It further forbids consideration of such a youth as a criminal, consideration of the adjudication as a conviction, and use of the adjudication for impeachment purposes in court. *Id.* It allows the youth in question to deny, without consequence, the existence and result of any youth court proceeding. Miss. Code Ann. § 43-21-561(5). Mississippi Code Section 43-21-605 mandates that, once a child is found to be delinquent, the disposition must be "the least restrictive alternative appropriate to the best interest of the child and the community," it must allow the child to remain in "reasonable proximity" to the child's home community in light of the available alternatives and "the best interest of the child and the state," and it must state that the youth court considered the rehabilitative services required by the child. Miss. Code Ann. § 43-21-605 (Rev. 2015).

¶20. Each of the above-listed statutory requirements leads to the conclusion that Mississippi's youth court system exists to achieve purposes and use means that differ from the criminal system. To lump the two together simply because both address criminal activity but to disregard the differing methods and goals of the two systems is to adopt the "wooden approach" eschewed by the United States Supreme Court. *McKeiver v. Pennsylvania*, 403 U.S. 528, 541 (1971).

¶21. Similarly, there is no evidence in the record supporting the contention that Courtney faced stigma, anxiety, and insecurity following the filing of the youth court petition. We consider persuasive the reasoning of the Superior Court of Pennsylvania in *Commonwealth v. Dallenbach*, 729 A.2d 1218 (Pa. Super. Ct. 1999). In *Dallenbach* the Pennsylvania court

11

held that a juvenile enjoys the right to a speedy trial. Again no issue in the present case exists about whether Courtney enjoyed the constitutional right to a speedy trial—he did. The question for today is whether the youth court petition can be considered "the machinery of the criminal justice process" such that it triggered the running of the clock. *Beavers v. State*, 498 So. 2d 788, 790 (Miss. 1986).

¶22.   In any event, the *Dallenbach* Court relied on facts not in the record before us, *e.g.*, that "children experience an acceleration in the passage of time so that, to a juvenile, one year might seem to be five." *Dallenbach*, 729 A.2d at 1220 (¶ 10). The same can be written of the Iowa Supreme Court's decision in *In the Interest of C.T.F.*, 316 N.W.2d 865 (Iowa 1982), also cited by the dissent. For example, the Iowa court relied on facts indicating that being subject to juvenile proceedings causes stress, concern, and anxiety. *Id.* at 868-869. However, we may only act on the record before us. *Oakwood Homes Corp. v. Randall*, 824 So. 2d 1292, 1293 (¶ 4) (Miss. 2002) (citing *Branch v. State*, 347 So. 2d 957, 958–59 (Miss. 1977)). "Facts asserted to exist must and ought to be definitely proved and placed before us by a record, certified by law; otherwise, we cannot know them." *Randall*, 824 So. 2d at 1294 (¶ 4) (quoting *Mason v. State*, 440 So. 2d 318, 319 (Miss. 1983)).

¶23.   More applicable to the case *sub judice* is the Supreme Court of New Hampshire's decision in *State v. Justus*, 140 N.H. 413, 666 A.2d 1353 (1995). There, the same issue confronted the New Hampshire Court that confronts us today—whether the speedy-trial clock began to run with juvenile proceedings or with the indictment of the defendant as an adult. *Id.* at 415. The New Hampshire Court joined courts from Alabama, Arizona, and

Ohio in holding, as we do today, that the clock begins running with the instigation of criminal proceedings. *Id.* (citing *Cruse v. State*, 489 So. 2d 694, 697 (Ala. Crim. App. 1986); *State v. Myers*, 116 Ariz. 453, 454-55, 569 P.2d 1351, 1352–53 (1977) (en banc); *State v. Trapp*, 52 Ohio App. 2d 189, 368 N.E.2d 1278, 1280 (1977)).

¶24. We discern no reason to hold that, pursuant to applicable Sixth Amendment jurisprudence, the Due Process clause requires the speedy-trial clock applicable to the criminal proceedings against Courtney to begin running with the filing of the youth court petition.

¶25. Speedy-trial claims are analyzed under the *Barker* test. *Barker* requires a balancing of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The *Barker* Court explained that each case must be considered "on an *ad hoc* basis" and that it sought only to "identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right" to a speedy trial. *Id.* The Court wrote,

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

*Id.* at 533. *See also Bateman v. State*, 125 So. 3d 616, 633 (¶ 59) (Miss. 2013) (The *Barker* factors must be balanced "along with other relevant circumstances.") The State bears the burden of proving good cause for a speedy-trial delay and thus bears the risk of non-

13

persuasion. ***DeLoach v. State***, 722 So. 2d 512 (Miss. 1998). The sole remedy for a speedy-trial violation is reversal of the trial court's decision and dismissal of the charges against the defendant. ***Price v. State***, 898 So. 2d 641, 647 (¶ 11) (Miss. 2005).

### 1. Length of Delay

¶26. When the delay between a defendant's indictment (or arrest) and trial is more than eight months, it is presumptively prejudicial and triggers a balancing of the remaining three ***Barker*** factors. ***State v. Woodall***, 801 So. 2d 679, 681-82 (¶ 11) (Miss. 2001). Here, authorities arrested Courtney on July 8, 2015. The circuit court tried him on August 15, 2017. The delay of 769 days is presumptively prejudicial and triggers a consideration of the remaining ***Barker*** factors.

### 2. Reason for Delay

¶27. The State bears the burden of providing a speedy trial. ***Hersick v. State***, 904 So. 2d 116, 121 (¶ 7) (Miss. 2004). "The State bears the concomitant burden of showing that either the delay was caused by the defendant or that the delay was for good cause." ***Id.*** When the State is unable to do either, the factor must be weighted against the State. ***Id.*** Delays caused by the defense, such as requests for continuances, will toll the running of the speedy-trial clock for the length of time attributable to the continuance. ***Id.***

¶28. Here, Courtney was formally indicted on September 18, 2015. When a defendant is indicted by the first available grand jury in the county, the time between arrest and indictment is not counted against either the state or the defense. ***Brengettcy v. State***, 794 So. 2d 987, 993 (¶ 14) (Miss. 1999). The record does not mention if Courtney was indicted by the first

14

available grand jury, but the grand jury indicted Courtney three months after the circuit court obtained jurisdiction. Neither party suggests that the indicting grand jury was not the first available, and Courtney argues that the speedy-trial clock began running on the date of his indictment rather than on the earlier date of his arrest. Accordingly, the delay between arrest and indictment is not counted against the State.

¶29. The record contains several continuances that delayed Courtney's arraignment and trial. Agreed continuances are weighed against the defense. *Sharp v. State*, 786 So. 2d 372, 380-81 (¶ 7) (Miss. 2001). The trial court attempted to arraign Courtney on November 16, 2015, but Courtney indicated that he had retained an attorney who was not present in the courtroom. The record reflects that the attorney, when contacted by phone, denied having been retained to represent Courtney. By order dated November 19, 2015, the circuit court continued Courtney's arraignment until December 1, 2015, in order to allow Courtney to retain counsel. Courtney caused the November 2015 continuance by mistakenly believing the attorney in question represented him when he did not, and the delay occasioned does not count against the State.

¶30. The trial court made a second attempt at arraignment on December 1, 2015. Courtney continued to claim the same attorney represented him, but the attorney present in the courtroom told the trial court that although he had discussed representing Courtney with Courtney's family, he did not yet do so. The court granted a second continuance of the arraignment by agreed order dated December 18, 2015, postponing the arraignment until February 8, 2016. Again, Courtney's confusion regarding who would represent him

15

occasioned the delay. The problem continued to arise on February 8, 2016, when the court again attempted to arraign Courtney. At the February 2016 hearing, the trial court decided to appoint counsel for Courtney. By order dated February 8, 2016, and again for the purpose of allowing Courtney time to retain counsel, the trial court granted the parties' joint motion to continue and postponed the arraignment until May 23, 2016. On April 7, 2016, Courtney waived arraignment, and the record reflects that the circuit judge set trial for May 23, 2016. Because Courtney's confusion regarding retaining counsel caused the totality of the delay between Courtney's arrest and waiver of arraignment, the delay so occasioned does not weigh against the State.

¶31.     After Courtney waived arraignment and the court set the first trial date, the motions for continuance began. On May 23, 2016, the trial court granted the parties' joint motion for a continuance and continued the trial until August 16, 2016. By order dated August 15, 2016, the trial court granted another joint motion for a continuance and moved the trial date to November 14, 2016. An order dated September 15, 2016, duplicated the relief granted on August 15, 2016, in that it also purported to grant the parties' joint motion for a continuance and to continue the trial until November 14, 2016, to allow time for plea negotiations. The circuit judge again continued trial upon joint motion of the parties by order dated November 16, 2016, and reset the trial for February 27, 2017. On February 27, 2017, on Courtney's motion, the trial court continued the trial until May 14, 2017. The next continuance came via order dated May 15, 2017, granting Courtney's motion for a continuance and resetting trial for August 14, 2017. Each motion for continuance indicated that Courtney had waived his

16

constitutional and statutory rights to a speedy trial for the applicable periods of time. Every post-arraignment motion was made by Courtney either jointly with the State or alone. Accordingly, none of the delay leading up to the August 2017 trial is weighed against the State.

### 3. Defendant's Assertion of Speedy-Trial Right

¶32. Although the State bears the burden to bring a defendant to trial, the defendant "has some responsibility to assert his right to a speedy trial." *Wiley v. State*, 582 So. 2d 1008, 1012 (Miss. 1991) (citing *Flores v. State*, 574 So. 2d 1314, 1323 (Miss. 1990)). The ultimate responsibility, though, must rest with the government rather than the defendant. *Barker*, 407 U.S. at 531. The Court has held that the factor weighs against a defendant who waits a significant amount of time after arrest to demand a speedy trial. *Bateman v. State*, 125 So. 3d 616, 630 (¶ 48) (Miss. 2013).

¶33. Courtney was arrested July 8, 2015. The Court appointed counsel to represent him on February 8, 2016, and he requested a speedy trial less than a month later, on May 10, 2016, in his request for discovery. However, as noted by the trial court in the order denying Courtney's subsequent motion for dismissal on speedy-trial grounds, Courtney joined in a motion for a continuance less than two weeks after demanding a speedy trial. As detailed above, he joined in two additional motions for continuance and made two more motions for continuance after the total of three joint motions that led in unbroken succession to the trial itself. In other words, Courtney requested each one of the five continuances that delayed his trial following his arraignment. "When a defendant moves for a speedy trial but

17

simultaneously requests a continuance, the defendant's speedy-trial request cannot be viewed as a request to be tried promptly." *Perry v. State*, 233 So. 3d 750, 758 (¶ 17) (Miss. 2017) (citing *Rowsey*, 188 So. 3d at 495 (¶ 28)). A demand for a speedy trial, to be effective, must be a request to go to trial. *Rowsey*, 188 So. 3d at 495 (¶ 28). When the putative speedy-trial demand is coupled with requests for continuances by the defense, it loses effect as a request to go to trial. *Id.*; *see also Franklin v. State*, 136 So. 3d 1021, 1035-1036 (¶ 53) (Miss. 2014).

### 4. Prejudice

¶34. To determine whether a defendant was prejudiced by the delay, the Court considers: "(1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired." *Bateman*, 125 So. 3d at 630 (¶ 51) (internal quotation marks omitted) (quoting *Brengettcy*, 794 So. 2d at 994). Of the three, the most serious is the final one, since a defendant's inability to adequately prepare his case "skews the fairness of the entire system." *Barker*, 407 U.S. at 532; *see also State v. Magnusen*, 646 So. 2d 1275, 1284 (Miss. 1994).

¶35. The entirety of Courtney's argument on appeal regarding prejudice addresses what occurred before his arrest and before the youth court transferred the matter to circuit court. Because, as set forth above, the clock on the State's obligation to provide him with a speedy trial did not begin to run until his arrest in July 2015, the youth court proceedings do not enter into the speedy-trial discussion. Courtney offers no argument on appeal that delay following his arrest prejudiced him. Accordingly, he wholly fails to demonstrate prejudice

18

resulting from the delay. It is worth noting, however, that even if the clock began running, as the dissent contends, on May 2, 2014, when the youth court petition was filed, of the above-listed *Barker* factors, only one—the reason for the delay—could conceivably count against the State, and our holding that Courtney's speedy-trial rights were not violated would stand.

## CONCLUSION

¶36. Courtney waived the statute of limitations affirmative defense by failing to present it for the trial court's consideration. Turning to his claimed violation of the constitutional right to a speedy trial, other than the length of delay itself, none of the *Barker* factors weigh in Courtney's favor. The record reflects that Courtney caused and requested the continuances that delayed his arraignment and trial; he nullified his request for a speedy trial, such as it was, by requesting additional continuances after making it; and he offers no relevant argument on appeal that the delay prejudiced him. Discerning no merit in the arguments he presents, we affirm.

¶37. **AFFIRMED.**

**RANDOLPH, C.J., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.**

**KING, PRESIDING JUSTICE, DISSENTING:**

¶38. Because the petition filed in the youth court was the equivalent of a formal indictment, served to notify Courtney that he was under the jurisdiction of the youth court, and accused him of crimes, I would find that his constitutional right to a speedy trial attached at the filing

19

of the youth court petition. Accordingly, I dissent.

¶39. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. At the time the alleged crime occurred, Courtney was seventeen years old. Mississippi Code Section 43-21-151 (Rev. 2015) provides that "the youth court shall have exclusive original jurisdiction in all proceedings concerning a delinquent child, a child in need of supervision, a neglected child, an abused child or a dependent child . . . ." The Youth Court Intake Unit conducted a preliminary investigation of Courtney and asserted that Courtney was a delinquent child or a child in need of supervision and was within the purview of the Mississippi Youth Court Act and of the youth court. The youth court then ordered that a formal petition be filed.

¶40. On May 2, 2014, a petition was filed in the youth court alleging that Courtney was a delinquent child who had committed the act of sexual battery of another person without her consent in violation of Mississippi Code Section 97-3-95(1)(a) (Rev. 2014). Under Mississippi Code Section 43-21-455, petitions in the youth court must

> set forth plainly and concisely with particularity:
>
> a) identification of the child, including his full name, birth date, age, sex and residence;
> . . . .
>
> (c) a statement of the facts, including the facts which bring the child within the jurisdiction of the youth court and which show the child is a delinquent child, a child in need of supervision, a neglected child or an abused child . . . .

Miss. Code. Ann. § 43-21-455 (Rev. 2015).

20

¶41. As the majority states, "[a] formal indictment or information or an arrest—whichever first occurs—triggers the constitutional right to a speedy trial." *McBride v. State*, 61 So. 3d 138, 142 (Miss. 2011) (citing *United States v. Marion*, 404 U.S. 307, 320, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971)). The petition, filed by the youth court prosecutor, served as a formal charging document and notified Courtney that he was under the jurisdiction of the youth court. This Court repeatedly has held that in youth court cases, "where a charge of delinquency is based upon the violation of a criminal law, the petition must charge the offense *with the same particularity required in a criminal indictment*." *E.K. v. Miss. Dep't of Child Prot. Servs.*, 249 So. 3d 377, 386 (Miss. 2018) (emphasis added) (quoting *In re Dennis*, 291 So. 2d 731, 733 (Miss. 1974)); *see also* Miss. Code Ann. § 43-21-455(4) (Rev. 2015). "In short, the constitutional right to a speedy trial attaches *when a person has been accused.*" *Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989) (emphasis added) (citing *Beavers v. State*, 498 So. 2d 788, 789-90 (Miss. 1986), *overruled on other grounds by State v. Ferguson*, 576 So. 2d 1252 (Miss. 1991)). The youth court petition clearly accuses Courtney of the crime of sexual battery. It states,

> [t]hat on or about 11/02/2012, in GREENE COUNTY, MISSISSIPPI, MATTHEW BLAKE COURTNEY did purposefully, knowingly, and unlawfully commit the act of SEXUAL BATTERY OF ANOTHER PERSON WITHOUT HIS OR HER CONSENT in violation of §97-3-95(1)(a) of the Mississippi Code of 1972, Annotated against the peace and dignity of the State of Mississippi. Youth did willfully, unlawfully and feloniously engaged in sexual penetration of [the victim] without her consent.

Further, the State itself contended that "a petition in youth court is the equivalent of an indictment for an adult." *See In re C.A.*, 872 So. 2d 705, 706 (Miss. Ct. App. 2004) ("For

21

clarification purposes, we point out that a petition in Youth Court is the document that contains the allegation of why the child is said to be a delinquent. It is the equivalent of an indictment for an adult.").[1] The State additionally stated that "the petition filed against Courtney served as an indictment because it notified him of the claims against him and the elements involved."

¶42.    We continually have made "it crystal clear [that] the constitutional rights of a child will be protected by this Court . . . ." *In re Dennis*, 291 So. 2d at 733 (quoting *In re Slay*, 245 Miss. 294, 147 So. 2d 299, 302 (1962)).  Had Courtney committed an offense when he was eighteen, he would have been entitled to his speedy-trial rights as soon as he was accused of his crime. This Court cannot now deny Courtney's constitutional right to a speedy trial simply because he was a juvenile and was accused in the youth court. The United States Supreme Court has emphasized in cases involving juveniles that "it would be extraordinary if our Constitution did not require the procedural regularity and the exercise of care implied in the phrase 'due process.' Under our Constitution, the condition of being a boy does not justify a kangaroo court." *In re Gault*, 387 U.S. 1, 27–28, 87 S. Ct. 1428, 1444, 18 L. Ed. 2d 527 (1967).

¶43.    The majority finds that speedy-trial rights do not apply to juveniles because juvenile proceedings are labeled civil in nature. Yet the civil label attached to juvenile proceedings is illusory. As the United States Supreme Court has stated, "it is clear under our cases that

---

[1]"The petition is the equivalent of an indictment in the adult court system, and functions as the formal charging document." Jeffrey Jackson, Mary Miller, Donald Campbell, et al., *Encyclopedia of Miss. Law* § 78:25 (2d ed.), Westlaw (database updated Oct. 2018).

determining the relevance of constitutional policies, like determining the applicability of constitutional rights, in juvenile proceedings, requires that courts eschew the 'civil' label-of-convenience which has been attached to juvenile proceedings . . . ." ***Breed v. Jones***, 421 U.S. 519, 529, 95 S. Ct. 1779, 1785, 44 L. Ed. 2d 346 (1975) (quoting ***In re Gault***, 387 U.S. at 50). The Supreme Court explained in ***Gault*** that,

> In the first place, juvenile proceedings to determine "delinquency," which may lead to commitment to a state institution, must be regarded as "criminal" for purposes of the privilege against self-incrimination. To hold otherwise would be to disregard substance because of the feeble enticement of the "civil" label-of-convenience which has been attached to juvenile proceedings. Indeed, in over half of the States, there is not even assurance that the juvenile will be kept in separate institutions, apart from adult "criminals." In those States juveniles may be placed in or transferred to adult penal institutions after having been found "delinquent" by a juvenile court. For this purpose, at least, commitment is a deprivation of liberty. It is incarceration against one's will, whether it is called "criminal" or "civil."

***Gault***, 387 U.S. at 49–50. The filing of a petition in juvenile court begins the proceedings to adjudicate whether the juvenile has violated a criminal law and to determine whether the juvenile should be committed to a state institution. It is unrealistic to forego constitutional protections for children on the premise that the proceedings are labeled "civil."

¶44.    I take issue with the majority's contention that no showing has been made that the purposes of Mississippi's youth court statutes closely match that of Mississippi's criminal justice system. By definition, the youth court statues hinge on this state's criminal justice laws.  Under Section 43-21-105 of the Youth Court Act, a "delinquent child" is defined as a "child who has reached his tenth birthday and who has committed a delinquent act." Miss. Code Ann. § 43-21-105(i) (Rev. 2015). A "delinquent act" is defined as "*any act, which if*

23

*committed by an adult, is designated as a crime* under state or federal law, or municipal or county ordinance other than offenses punishable by life imprisonment or death." Miss. Code Ann. § 43-21-105(j) (Rev. 2015) (emphasis added). The majority comments on differences between criminal laws and youth court laws. However, the majority omits that the overarching purpose of the criminal justice system is to be punitive and rehabilitative. Likewise, the delinquency aspect of the youth court system is designed to have those same rehabilitative and punitive goals for juveniles.[2] Therefore, I would find that the purposes of the youth court statutes do closely match that of the criminal justice system.

¶45. The majority also argues that we are not now faced with deciding whether the right to a speedy trial applies to youth court proceedings. Yet we cannot decide when the clock begins to run for speedy-trial purposes without deciding whether the right applies to juveniles. While the majority discerns no reason to hold that juveniles have a constitutional right to a speedy trial, I find many. As the Superior Court of Pennsylvania stated in its holding that the right to a speedy trial applied to juvenile proceedings,

> The state's role as protector does not eliminate the juvenile's rights to a "fundamentally fair" proceeding under the due process clause. Rather, in its protective role the state must consider the importance of time in a developing child's life in attempting to fashion a successful rehabilitation program for each juvenile. As the juvenile years are marked with significant changes and rapid development, children experience an acceleration in the passage of time so that, to a juvenile, one year may seem to be five. To ensure successful rehabilitation, the reformation program (including punishment) must commence within a reasonable time of the child's delinquent act so that the child can comprehend the consequences of his act and the need for reform. As a result, the concept of "fundamental fairness" in juvenile proceedings would

---

[2]These goals differ from those of the neglected and abused child portions of the youth court system.

24

seem to require that at least some limit be placed on the length of time between the delinquent act and the case disposition, including any associated punishment.

*Commonwealth v. Dallenbach*, 729 A.2d 1218, 1220 (Pa. Super. Ct. 1999). Similarly, the Iowa Supreme Court reasoned that

Charging a juvenile with a delinquent act results in family stress and causes concern and anxiety on the part of the juvenile. It often affects the juvenile's relationships with peer groups, school officials, and other adult authorities. Also, unreasonable delay may affect the quality and quantity of evidence presented, impairing the juvenile's defense and preventing a fair hearing. Finally, in the event the juvenile is found to have committed the delinquent act, the delay may be detrimental to the youth's rehabilitation. We therefore conclude that juveniles have a constitutional right to a speedy trial.

*In Interest of C. T. F.*, 316 N.W.2d 865, 868–69 (Iowa 1982). Therefore, like our sister jurisdictions, I would find that the filing of the youth court petition begins the constitutional speedy-trial clock.

¶46.    The majority states that it may only act on the record and refuses to consider that juvenile proceedings to determine delinquency cause stress, concern, and anxiety. The question of whether or not proof in the record exists of juvenile suffering, stress, and anxiety is required only when the court evaluates whether a speedy-trial violation has occurred. And this Court previously has presumed anxiety in adult proceedings from "the mere fact of delay even where the defendant does not complain that he has suffered anxiety." *Johnson v. State*, 666 So. 2d 784 (Miss. 1995) (citing *Jasso v. State*, 655 So. 2d 30, 35 (Miss. 1995), *abrogated on other grounds by Hennington v. State*, 702 So. 2d 403 (Miss. 1997)); *see also Jasso*, 655 So. 2d at 35 ("Jasso and Sanchez did not assert any anxiety, but this Court presumes some anxiety as 'inevitably present.'"). Here, however, the majority presumably

25

makes a blanket pronouncement that juveniles are not subject to stress and anxiety as a result of a petition of delinquency filed against them. A delinquency proceeding may result in the juvenile's being sentenced to similar punishments as an adult, such as probation, house arrest, or even incarceration. I can only surmise that the majority engages in willful blindness in its refusal to consider the presumption of anxiety and stress for juveniles faced with delinquency proceedings.

¶47.   Because the youth court petition that accused Courtney of the crime of sexual battery was filed on May 2, 2014, I would find that Courtney's right to a speedy trial began on that date. Although the petition was filed on May 2, 2014, his transfer to circuit court was not ordered until June 30, 2015, more than thirteen months later. Both the majority and the trial court failed to consider the thirteen-month delay in its speedy-trial analysis. The youth court proceedings were not made part of the circuit court record or of the record on appeal. Therefore, I would remand this issue to the trial court to determine with a full record whether good cause existed for the delay in transferring jurisdiction from the youth court to the circuit court.

        **KITCHENS, P.J., JOINS THIS OPINION.**