# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-01129-COA

CHRISTOPHER MOORE A/K/A CHRISTOPHER A. MOORE A/K/A CHRISTOPHER ALEXANDER MOORE                                                  APPELLANT

v.

STATE OF MISSISSIPPI                                                  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 06/19/2024 |
| TRIAL JUDGE: | HON. MARK SHELDON DUNCAN |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EUGENE CARLOS TANNER III |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: PARKER ALAN PROCTOR JR. ALLISON KAY HARTMAN |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/24/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., McCARTY AND EMFINGER, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.    Wielding a gun, a man kicked in the door to his former girlfriend's home. He attacked and strangled her, and then forced her into her truck while threatening that he would end her life. After he finally released her hours later, medical treatment revealed six broken ribs. The man was charged with burglary of a dwelling, aggravated domestic assault, and kidnapping, and a jury ultimately found him guilty on all counts.

¶2.    He raises two arguments on appeal. First, that his right to a speedy trial was violated. Second, that his victim's medical records should not have been admitted during trial.

Finding both claims without merit, we affirm.

## BACKGROUND FACTS

¶3.     Kimberly Stevenson began dating Christopher Moore in 2012. The relationship ended about six years after that but remained "friendly." Stevenson "took care of business affairs" for Moore's trucking business and helped with his children. She was particularly close with his young son, whom she had helped raise as an infant.

¶4.     According to Stevenson, one night Moore had told her he wanted to get married, or at least resume their relationship. Stevenson declined. The next morning he began calling her over and over again. She ignored his calls. She then started hearing a noise at the front door of her home in Leake County.

¶5.     Even though her front door was deadbolted, Moore "busted the door in on me," she recalled, and "that's when [she] saw the gun." Moore told her they would be together, and she recounted that she "was just frantic because [she] was so scared." She would later testify that Moore "was enraged," "screaming at me, and he was telling me he was going to kill me."

¶6.     Moore strangled Stevenson, which caused her to pass out. When she regained consciousness, she heard Moore say, "Oh, my God. I thought I killed you." Moore then slammed his whole body down on hers and repeatedly hit her. He demanded her keys to her truck. Stevenson tried to retrieve her handgun, but Moore took it from her. Moore then forced her to leave with him in her truck, while dressed only in a nightgown. They drove towards his home in Jackson.

¶7.     Once they reached Moore's house, in her words, "[h]ours went by," with Stevenson

2

bleeding and Moore telling her he was going to kill her. After many hours, Moore gave her back the keys to her truck, and Stevenson left his house. While the details were hazy, Stevenson believed she was finally able to leave around 4:00 p.m. after Moore had burst into her home that morning.

¶8. Her family met her back in Leake County where she insisted she did not want to involve law enforcement. Her injuries were so severe that she had to seek medical treatment the next day, as she "had severe abdominal pain," as well as "throbbing headaches" and "pain all around [her] eye, [and] jaw." X-rays later revealed she had six broken ribs. The hospital alerted the authorities.

## PROCEDURAL HISTORY

¶9. In June 2019, a Leake County grand jury indicted Moore on three counts: kidnapping, burglary of a dwelling, and aggravated domestic violence. The record does not reveal why, but the indictment was not file-stamped until March 5, 2021. And even though capias was issued in June 2019, the record shows Moore was not arraigned until March 11, 2021. At arraignment, he plead not guilty and was appointed counsel.

¶10. In May 2021, Moore handwrote a lengthy letter that appeared to be sent to the United States Department of Justice and the Mississippi Bar, and was file-stamped in his criminal file. He wrote a series of grievances complaining of his appointed counsel, the trial judge, and the procedure towards trial. In one line of the multi-page letter, Moore asserted that he had told his lawyer he was "NOT Pleading to Nothing" because he was "NOT Guilty" and that he informed his counsel on May 4, 2021, that he wanted "to request a Fast and Speedy

3

Trial."

¶11.    Afterwards, the record shows his case was continued multiple times.  On May 20, 2021, the trial court continued the case at Moore's request.  A September 1, 2021 order continued the case after the State had requested an extension and the defendant had agreed. A September 16, 2021 order explained that Moore requested a continuance, which was granted, and the trial court determined that as a result, "[t]he Defendant hereby waives the 270[-]day rule." A January 5, 2022 order recounted the same.  A January 21, 2022 order notes that the court was *sua sponte* continuing the matter.  A May 4, 2022 order reflects the same as found in the September 16, 2021 and January 5, 2022 orders—that Moore had requested a continuance.  And the same form order is entered again on September 7, 2022.

¶12.    The docket then shows an agreed order of continuance on February 17, 2023, which came "as a result of the Defendant's failure to appear in the January 2023 term of Court[.]" Another order granting a continuance at Moore's request appears on May 1, 2023, on the docket.  Asserting that a "key witness is unavailable at this time," counsel for Moore filed another motion for a continuance. This resulted in another continuance ordered on September 6, 2023.  The trial court granted yet another one of defense counsel's motions for continuance on January 4, 2024, after counsel sought an extension due to suffering from "double pneumonia."

¶13.    All told, there were a minimum of eleven orders continuing the case, with at least ten of those continuances either expressly sought or agreed to by Moore.

¶14.    During some of this time, Moore was out on bond, as shown by a September 1, 2021

order, which explained that he had previously bonded out, his bond had been revoked, and he was then again released with an ankle monitor.

¶15. Ultimately, Moore was tried and found guilty by a jury on May 21, 2024. The trial court sentenced Moore to serve 20 years for the kidnapping conviction, 15 years for the burglary of a dwelling conviction, and 15 years for the aggravated domestic violence conviction, with the three sentences to be served consecutively in the custody of the Mississippi Department of Corrections.

¶16. Post-trial motions filed by trial counsel were denied and Moore timely appealed; his case was assigned to us for review. Other relevant details from the procedural history of this case will be recounted below.

## DISCUSSION

¶17. Through different appellate counsel, Moore asserts two issues on appeal. First, he argues his federal and state rights to a speedy trial were violated by the years-long process of taking him to trial. Second, he argues the trial court should not have allowed testimony and proof about Stevenson's injuries at trial via her medical records.

### I. Moore's speedy trial rights were not violated.

¶18. Moore attacks the lengthy delay between his indictment and trial as "contraven[ing] and violat[ing] his speedy trial rights[.]" While the State concedes the delay triggers a speedy trial analysis, it argues that Moore's rights were "not violated when the delay was caused by his own actions." We first review Moore's constitutional right and then his statutory right.

### A. The Constitutional Right

¶19. "A formal indictment or information or an arrest—whichever first occurs—triggers the constitutional right to a speedy trial." *McBride v. State*, 61 So. 3d 138, 142 (¶8) (Miss. 2011). "Allegations that a defendant's right to a speedy trial have been violated are fact specific and are examined and determined on a case-by-case basis." *Brunson v. State*, 944 So. 2d 922, 924 (¶8) (Miss. Ct. App. 2006). "To determine whether a defendant's constitutional right has been violated, we must consider and weigh the *Barker* factors, which are (1) the length of delay, (2) the reasons for the delay, (3) assertion of the right to a speedy trial, and (4) prejudice to the defense.'" *Johnson v. State*, 404 So. 3d 143, 161 (¶47) (Miss. Ct. App. 2024) (quotation mark omitted) (quoting *Brunson*, 944 So. 2d at 924 (¶8)).[1]

¶20. "A delay in excess of eight months between arrest and trial establishes presumptive prejudice sufficient to trigger analysis under *Barker*." *Id*. The State stipulates that the time to trial in this case exceeds eight months, so we review each factor in turn.

#### 1. Length of Delay

¶21. It is unclear whether Moore was arrested or indicted first. The indictment was signed by the grand jury foreperson on June 24, 2019. His trial was not conducted until May 21, 2024. This is a delay of 1,794 days, for a total time of 4 years, 10 months, and 28 days. This extensive delay covers almost 59 months, or over 7 times the "presumptive prejudice" of 8 months, triggering a full *Barker* analysis.

#### 2. Reasons for the Delay

---

[1] *See Barker v. Wingo*, 407 U.S. 514 (1972).

¶22. "Once the delay is deemed presumptively prejudicial, the burden shifts to the prosecution to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of these reasons." *McBride*, 61 So. 3d at 142 (¶9). "Different weights are assigned to various reasons for the delay." *Id.*

¶23. "Delays caused by the defense, such as requests for continuances, will toll the running of the speedy-trial clock for the length of time attributable to the continuance." *Courtney v. State*, 275 So. 3d 1032, 1042 (¶27) (Miss. 2019). Likewise, "[a]greed continuances are weighed against the defense." *Id.* at (¶29).

¶24. In one recent case from our Court, we considered a "six-and-a-half-year delay [that] far exceed[ed] the eight-month threshold." *Johnson*, 404 So. 3d at 161 (¶48). But the defendant had "requested or joined in requests for fifteen continuances." *Id.* at (¶50). We held that since the defendant "requested or agreed to the overwhelming majority of the delays in the case, and the remaining delays are considered neutral, this factor weigh[ed] against" him. *Id.*

¶25. The same applies in this case. While the passage of time between Moore's indictment and eventual trial is almost five years, nearly all of the delays were from his requests or agreements to continue the trial. Of the eleven continuances in this case, ten were at the request of the defendant or agreed to by his trial counsel.

¶26. The remaining order pointed out that continuance was being issued *sua sponte* by the trial court; while the order was in January 2022, the court determined that the continuance was needed due to a COVID-19 outbreak. Our Supreme Court has noted that "delays caused

7

by the COVID-19 pandemic are neutral[.]" *Ward v. State*, 346 So. 3d 868, 871-72 (¶11) (Miss. 2022).[2]

¶27.   Accordingly, this factor weighs against Moore.

### 3.      Assertion of the Right to a Speedy Trial

¶28.   Through appellate counsel, Moore alleges his May 2021 letter raising a variety of grievances against his lawyer and the legal process was an invocation of his right to a speedy trial. "When the putative speedy-trial demand is coupled with requests for continuances by

_____

[2] Originally the record did not contain either the motions for continuance or the orders granting them. Even when a party designates the whole record for appeal, certain documents are excluded absent their specific designation. *See* MRAP 10(b)(3). Among these commonly excluded matters are "any motion and order of continuance or extension of time." MRAP 10(b)(3)(iii).

In briefing and during oral argument, appellate counsel for Moore argued the record did not affirmatively show why the continuances were granted, and this should be considered in the defendant's favor. The State's argument was that this Court could take judicial notice of the docket absent a complete record.

However, the duty to "designate the content of the record" is the duty of "[t]he parties," not the appellate courts. MRAP 10(a); *see* MRAP 10(b)(5) (setting out the procedure when the parties disagree on the content of the record). Likewise, the duty to complete the record is the duty of the appellant, not the appellate courts. *See* MRAP 11(a).

Absent a complete record, a party cannot support its argument, as "[t]he argument *shall* contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, *and parts of the record relied on.*" MRAP 28(b)(7) (emphasis added).

It is certainly true that we may take judicial review of a filing on a court docket. *See Badger v. State*, 290 So. 3d 377, 381 (¶14) (Miss. Ct. App. 2020) (collecting cases acknowledging that this Court can take judicial notice of filings on a docket). However, parties should not rely on the appellate courts to complete their record or support their arguments with citations, statutes, and record cites.

Shortly after oral argument, the State filed a motion to supplement the record with the omitted materials relevant to the continuance in this case, and Moore did not oppose it. This Court granted the motion and further ordered other components of the docket to be supplemented, including "the original handwritten or typed pre-MEC docket sheet," with costs assessed to the appellant.

the defense, it loses effect as a request to go to trial." *Courtney*, 275 So. 3d at 1043 (¶33).

¶29.    Even if Moore's bare reference in the letter to his assertion that he told his lawyer he wanted a speedy trial counts as an assertion of the right, he sought or agreed to ten more continuances after that assertion.  As we reckoned in *Johnson*, "his subsequent requests for and acquiescence in additional continuances . . . have undermined that demand substantially." *Johnson*, 404 So. 3d at 163 (¶53).  Accordingly, we find this factor weighs against Moore.

### 4.    Prejudice to the Defense

¶30.    "To determine whether the delay resulted in actual prejudice, the Court considers three interests that the right to a speedy trial was meant to protect: '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" *Taylor v. State*, 162 So. 3d 780, 787 (¶16) (Miss. 2015) (quoting *Jenkins v. State*, 947 So. 2d 270, 277 (¶21) (Miss. 2006); *Barker*, 407 U.S. at 532)).  "Of these three interests, the last is the most important; and when violated, [it is] most prejudicial to the defendant." *Collins v. State*, 232 So. 3d 739, 746 (¶26) (Miss. Ct. App. 2017) (quoting *Hersick v. State*, 904 So. 2d 116, 123 (¶18) (Miss. 2004)).

¶31.    "Generally, proof of prejudice entails the loss of evidence, death of witnesses, or staleness of an investigation." *McCormick v. State*, 183 So. 3d 898, 903 (¶21) (Miss. Ct. App. 2015) (quoting *Sharp v. State*, 786 So. 2d 372, 381 (¶19) (Miss. 2001)).  The defendant "bears the burden of showing actual prejudice, since the defendant is clearly in the best position to show prejudice under this prong." *Reed v. State*, 191 So. 3d 134, 141 (¶19) (Miss. Ct. App. 2016) (internal quotation marks omitted).

¶32. As in *Johnson*, here the defendant "was not incarcerated while awaiting trial." *Johnson*, 404 So. 3d at 163 (¶55). It appeared from an order of the trial court that he had been out on bond, which was subsequently revoked, but he was then released on bond with an ankle monitor on September 1, 2021. There is no proof in the record that he suffered any "anxiety and concern" during this time period.

¶33. While Moore argued in general that he suffered prejudice from the speedy trial delay, he has not shown how his right to defend against the charges were impaired. Moore argues he was incarcerated during part of the time prior to trial, but as set out above, for the majority of the time he was free on bond. Through counsel, he claims his "defense was impaired by the State's denial of his request for a speedy trial," but has not explained how. He argues that his defense "was never looked into pretrial or presented at trial," but that is a claim of ineffective assistance—*not* that a witness was unavailable or that evidence had been lost by the passage of time. Similarly, his argument that "no one bothered . . . to even request discovery materials for nearly two years" does not show prejudice, but simply demonstrates Moore's frustration with his first appointed counsel.

¶34. Moore took the stand in this case and presented his side of the story to the jury—that the victim's story lacked credibility and that they were not in a relationship at all. As summed up by Moore's counsel in closing, the core theme of the defense was simply that Moore "told you this didn't happen, [and] she lied." While admitting that the victim had injuries, in closing, counsel argued that Moore simply "did not do this."

¶35. Moore has not claimed there was lost or missing evidence or a witness who was

unavailable. His core claim was simply the victim was lying. We find there is no showing of prejudice.

¶36. Of the four *Barker* factors, only the delay in this case favors Moore. Nearly the entirety of the reason for the delay was his requests for or agreement to continue the case. His assertion of the right was undermined by these repeated requests for delay, and he has not shown prejudice. Therefore, we find no constitutional speedy trial violation in this case.

### B. The Statutory Right

¶37. To show a violation of our speedy trial statute, a defendant must have proof beyond that the law itself was broken. To show a violation, the Supreme Court "require[s] that a defendant show not only that he was tried more than 270 days after his arraignment, but that he sustained prejudice as well." *McBride*, 61 So. 3d at 147 (¶35).

¶38. As the Court phrased it in a successor case, under the State's speedy trial statute, "absent good cause and a continuance, the State shall try a defendant for every indicted offense within 270 days." *Williams v. State*, 305 So. 3d 1122, 1133 (¶39) (Miss. 2020). But "non-compliance [with the statute] does not itself evince a violation of the defendant's rights." *Id*. at 1133-34 (¶39). "Indeed, a defendant must show the State not only violated the statute, but the violation resulted in actual prejudice to his or her defense." *Id*. at 1134 (¶39).

¶39. As set out above, Moore has not shown "actual prejudice" in his defense despite the delay in this case. Therefore we find no violation of his statutory right to a speedy trial.

### II. There was no objection to medical records or testimony at trial.

¶40. For his second assignment of error, Moore argues that "[t]he trial court committed

reversible error at the trial of this case by admitting as trial evidence medical testimony and records" relating to the medical treatment of the victim. He argues in part that the medical records were not authenticated, in part that the records contained hearsay, and in part that the nurse who testified regarding them should have been designated as an expert before testifying.

¶41. During trial, the State called to the stand Leslie Griffin, a nurse who had been on shift in the emergency room at Baptist Attala when the victim arrived. She identified the medical records from that treatment, and the State used her testimony to sponsor the 39 pages of records into evidence. The trial court inquired of defense counsel if there was an objection to introducing the records. "No objection," he replied. Nor was there any objection to the nurse's relatively brief testimony that followed, and there was no redirect.

¶42. In regards to the authenticity of the records or alleged hearsay contained within, the "failure to object to an issue at trial results in waiver of the issue on appeal." *Butler v. State*, 300 So. 3d 550, 555 (¶18) (Miss. Ct. App. 2020). As to the argument that the witness should have been qualified as an expert, "[a]n objection must be made with specificity to preserve error for appeal," and absent such an objection, we will find this "waives objection to expert or opinion evidence." *Stevens v. State*, 294 So. 3d 699, 706 (¶33) (Miss. Ct. App. 2020).

¶43. The lack of any objection in the trial below means this issue is not preserved for appeal, and so we find no error.

## CONCLUSION

¶44. While the delay between indictment and trial in this case was presumptively

12

prejudicial, we find that it does not warrant reversal, as the defendant either sought or agreed to nearly all the continuances leading to the delay. We find his arguments regarding the testimony of a State's witness were not preserved because there were no objections made at trial. Accordingly, we affirm the judgment of conviction and sentencing.

¶45. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**